## Washer's Exor. v. Washer's Exors.

(Decided May 16, 1911.)

### Appeal from Larue Circuit Court.

Wills—Construction of—The law prefers vested rather than contingent estates, and where a devise is made to several persons by name, with words of survivorship annexed, if the gift is to take effect immediately after the death of the testator, the uniform rule of construction is to refer the words of survivorship to that event and to regard them as intended to provide against the contingency of the death of the devisee in the testator's lifetime.

O. M. MATHER for appellant.

WILLIAMS & HANDLEY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In February, 1906, George Washer made his will, and in August, 1906, added a codicil thereto. He died in March, 1909, and à few days after his death his will and the codicil thereto were probated. He left surviving him as his children and heirs at law and who are also the devisees under his will, his three sons, J. C., W. G. and John H. Washer, his daughters, Mary E. Arnett, Sarah Huff and Margaret Walters, and two grandchildren—the children of his deceased daughter, Georgia Ann Marshall. At the time of the execution of the will his son, John H. Washer, who had at the time mentioned been married more than twenty years, was childless, and this son died in April, 1909, leaving all of his property, by will, to his widow, Mary R. Washer, the appellant. This litigation involves the question whether or not the widow of John H. Washer took the estate devised to her husband by his father, George Washer, and makes necessary the construction of the following clauses in the will of George Washer:

"2d. I desire that all my children shall share equally in my estate, and their names are as follows, Mary E. Arnett, J. H. Washer, Sarah Huff, Margaret Walters, J. C. Washer, W. G. Washer, and the children of my deceased daughter, Georgia Ann Marshall—the said children of Georgia Ann Marshall are only to have one-half as much as their mother would have inherited, that is, said children to have one-half of one-seventh of my estate.

"3d. If any of my children should die leaving no children surviving them, or all of my grandchildren, the children of my deceased daughter, Georgia Ann Marshall, should die before I do, then I want all of their part of my estate to go back into the corpus of my estate and be equally divided among the survivors.

"4th. After collecting all outstanding obligations due me, I will that my executors hereinafter named shall divide same among my several heirs; but if I have advanced anything to any of my children, or any of them shall owe me anything at my death, I desire that same be charged to such one or ones, and the same deducted out of their part of my estate going to them.

"7th. It is further my will that the interest in my estate due to my daughters hereinbefore named shall be by my said executors invested in such lands as the said

executors may deem suitable for the use and benefit of my said daughters, taking the title to the said land thus bought for each daughter in the name of the daughter and her bodily heirs; and such daughter to have the use, profits, rents and income from the same during her natural life, and at her death the same to pass to and become absolutely the property of her children. And should any one of my daughters die childless, then it is my will that her interest derived from my estate shall pass into the body of my estate and be divided among my several heirs as their interest may appear."

The codicil reads:

"It is my desire that at my death and after the payment of all just debts against my estate that my executors named by me in the sixth paragraph of my will pay to my son, John H. Washer, the sum of five hundred dollars, and after the payment of this sum to him, then he, John H. Washer, to share equally with my other children named in my will in the remainder."

It is the contention of the widow and sole devisee of John H. Washer that as he survived his father, he took in fee the share given to him in the will of his father, and that she as his sole devisee is entitled to it. While the other devisees of George Washer insist that as John H. Washer died childless, the property devised to him by his father passed under the third clause of the will to the surviving devisees.

The record does not show that the estate devised to John H. Washer had been paid or delivered to him before his death, or that a settlement of the estate of George Washer was made before the death of John H. Washer, and so we will treat the case as if there had been no settlement or distribution. The lower court held that the estate devised to John H. Washer passed at his death to the other devisees and dismissed the petition of the appellant seeking to recover from the executors the estate devised to John H. Washer. We find ourselves unable to agree with the conclusion reached by the lower court, and will proceed to give the reasons why we think the widow of John H. Washer was entited to the estate devised.

In the second clause of his will the testator made an equal distribution of his estate between his children and gave one-half of one share to his grandchildren and in

clause four he directed his executors to divide his estate which consisted entirely of personal property among his heirs—not fixing any time for the distribution or putting any limitation upon the period when it should take place. In clause seven his executors were directed to invest the estate devised to his daughters in land, and this clause further provided that should any of his daughters die childless "her interest derived from my estate shall pass into the body of my estate and be divided among my several heirs as their interest may appear." Nowhere in these clauses of the will or in the ones that are omitted from the opinion is there any suggestion of a purpose to limit the interest of his sons in the estate devised to them. On the contrary the purpose to give them the absolute title is clearly manifest in clause two, where he provides that all of his children shall share equally, and in clause four directing his executors to divide his estate among his heirs. It is clause three that is relied on by appellees as limiting to a defeasible fee the estate given to his sons. But, unless such an intention is plainly expressed in this clause, we should not feel inclined to hold that the testator intended to defeat the absolute title disposed of in clause two and confirmed in clause four by the direction as to the distribution of the estate. It is the contention of counsel for appellant that the words "die before I do," in clause three apply to both children and grandchildren, while counsel for appellees insist that these words have reference alone to the grandchildren. There is room for difference of opinion as to the class of persons the testator intended these words to apply to. And it is said that the words in this clause that "I want all of their part of my estate to go back to the corpus of my estate and be equally divided among the survivors" is persuasive evidence of the fact that the testator did not have in mind the return to his estate during his life of the interest devised to his children, as the fair meaning of these words is that the devised estate upon the condition mentioned was to go back into his estate after his death. But this argument defeats the construction that would attempt to confine the words "die before I do" to the grandchildren, because the expression, "I want all of their part of my estate to go back into the corpus of my estate and be equally divided among the survivors" embraces the grandchildren as well as the children. There is nothing in

the clause from which it can be inferred that the testator intended that any difference should be made in the disposition of the estate in the event of the death of either the children or grandchildren. If the grandchildren died before he did, the part of the estate given to them was to go back to his estate and become a part thereof; and the same disposition was intended to be made of the estate divised to his children if they died before he did. Considering clause three as a whole, and keeping in mind the provisions of clauses two and four, we think the testator intended the limitation found in clause three to apply to. such children and grandchildren as died before he did. The will as a whole does not disclose any reason why the testator should have desired to limit the estate given to his sons to a defeasible fee, or why he should desire to deprive them of the full benefits of the estate given to them. He had four sons, and in the absence of some reason for so doing, or a plainly expressed purpose in his will, it is not to be presumed that he intended to deny his sons the right to control and dispose of as they pleased the estate devised to them. We are further confirmed in this construction of the will by the language of clause seven. In this clause the testator provided that the estate given to each daughter should be invested by the executors in land to be purchased for each daughter and conveyed to her and her bodily heirs—giving to the daughter in the event she died childless a life estate, with remainder to the children. And further directed that "should any one of my daughters die childless then it is my will that her interest derived from my estate shall pass into the body of my estate and be divided among my several heirs as their interests may appear." It will be observed that the words "die before I do," are not found in clause seven. In this clause the general direction is that if the daughters die childless the estate received by the one so dying shall return to his estate to be divided among his heirs. When the difference in the language of clause three and clause seven is taken into consideration, it seems that the testator intended to provide one period when the estate given to his daughter should return to his estate in the event they died without issue, and another period when the estate given to his sons and his grandchildren should return to his estate if they died without issue. Unless the testator intended to make a dis-

tinction in the time when the estate given to his daughters should revert to his estate, there is no reason why he should have inserted a clause applicable to the daughters alone. If the last sentence in clause seven had been omitted, then clause three would be applicable to the daughters as well as the sons, because it refers to all of his children. And so the construction that the words in clause three "die before I do" refers to sons as well as grandchildren is strengthened by the language of clause seven.

There is another rule in the construction of wills that should not be lost sight of, and that is the preference the law has for vested rather than contingent estates. This rule of construction is generally supported by the authorities and has often found expression in the opinions of this court. Jackman v. Jackman, 24 Ky. Law Rep., 2245. In Carpenter v. Hazelrigg, 103 Ky., 538, the court said:

"Where a devise is made to several persons by name, with words of survivorship annexed, if the gift is to take effect in possession immediately after the death of the testator, the uniform rule of construction is to refer the words of survivorship to that event and to regard them as intended to provide against the contingency of the death of the object of the testator's bounty in his lifetime."

In McCauley v. Dale, 108 S. W., 268, it is said:

"The law favors the vesting of estates. In cases of doubt it favors a fee rather than a less estate. And an estate once given in fee will not be defeated by a subsequent provision in the same instrument limiting it to a smaller estate unless the language of the instrument or the intention of the testator requires it."

In Page on Wills, section 658, it is said:

"As between the vested and contingent interests, the law wherever possible construes an interest as vested. The law always gives preference to vested over contingent remainders. It does not favor the abeyance of estates."

This rule is particularly applicable in the construction of the will before us, because under clauses two and four devise to each of the sons was to take effect immediately upon the death of the testator, and the declaration that it should go to the survivors upon the

death of any of them referred to this contingency taking effect during the life of the testator. If the words "die before I do," had been omitted from clause three, this rule of construction would have supplied their place—especially in view of the language used in clause seven relating to the survivorship of the estate given to his daughters.

Wherefore, the judgment is reversed, with directions to enter a judgment in conformity with this opinion.