## Allen v. Cincinnati, New Orleans & Texas Pacific Railway Company.

(Decided May 18, 1911.)

### Appeal from Pulaski Circuit Court.

1. Master and Servant—Furnishing Unsafe Tools to Servant to Work With—Injury to Servant—This action was brought by appellant to recover damages for the loss of an eye which he claimed was caused by the negligence of his master the appellee on account of certain tools being in an unsafe and dangerous condition. and while appellant was holding a steel rail as directed by his foreman, which was being cut, a piece of steel flew from one of the defective tools used by the other employe nnd struck him in the eye, destroying the sight.

2. Trial—Refusal of Court to Submit Case to Jury—The testimony shows that a cleaver furnished by appellee's foreman to the hands to work with, was in a bad condition, and there is nothing in the record indicating that any care was taken to furnish reasonably safe or suitable tools. Held that as there was testimony tending to show that the steel which entered appellant's eye came from the cleaver the case should have been submitted to the jury.

3. Negligence of Master—Responsibility to Servant—The Negligence in this case, if any, consisted in the furnishing by the master of defective and unsafe tools to the servant with which to work. It is the duty of the master to furnish his employes reasonably safe and fit tools with which to labor, and this duty cannot be delegated to another servant so as to relieve the master from responsibility.

DENTON & FLIPPIN for appellant.

JOHN GALVIN, O. H. WADDLE & SONS for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This action was brought by appellant, Alexander Allen, against appellee to recover the sum of $2,000 for the loss of an eye, which he claimed was caused by the negligence of appellee on account of certain tools being in an unsafe and dangerous condition. While appellee was holding a steel rail, as directed by his foreman, which was being cut in two, a piece of steel flew from one of the defective tools used by the other employes and struck him in the eye destroying the sight. The necessary allegations as to the knowledge of appellee of the

defective condition of the tool and the want of knowledge on the part of appellant, were made in the petition. The pleadings put these allegations in issue, interposed a plea of contributory negligence and want of jurisdiction of the court.

We will first dispose of the question of jurisdiction. Appellant was raised in Atlanta, Georgia, went from there a few years ago to Knoxville, Tennessee, and then from place to place until he was brought by an agent of appellee to work at Pineknott, Whitley County, Kentucky, and from there to Stearns, Whitley County, Kentucky. It was while he was at work at the last place named that he received his injury and was sent to Somerset to a hospital and from there to a Lexington hospital, where he remained for three or four weeks and returned to Somerset, Pulaski County, Kentucky, which he swore was his home at the time the action was instituted and at the time of the trial of the case in the lower court. That part of section 73, Civil Code, applicable to the question under consideration, is as follows:

"An action against such (common) carrier for an injury to a passenger, or to other person or his property, must be brought in the county in which the defendant, or either of several defendants, resides; or in which the plaintiff or his property is injured; or in which he resides, if he resides in a county into which the carrier passes."

It is conceded that appellee, a common carrier, passes into Pulaski County; therefore, as it appears from the only testimony on the subject that Somerset, Pulaski, County, is appellant's home, the section of the Code above copied clearly gave the Circuit Court of Pulaski County jurisdiction of this action. See the case of I. C. R. R. Co. v. Stith's Admr., 120 Ky., 237, and the authorities therein cited.

The facts of this case, as we understand them, are as follows: Appellant was ordered by his foreman to assist several others in cutting seven or eight feet off of a steel rail, which was done by placing it upon another, having several persons to hold the end farthest from the point where it was to be cut and appellant at the end nearest thereto to keep the rail steady while Ed. Walker struck the cleaver which was held in place by Jim Mitchell, with a sledge hammer. A few minutes after they

commenced to cut the rail, a piece of steel flew and struck appellant in the eye and injured him severely. The record shows that immediately after appellant was struck, some one of the hands asked, "where did that steel come from?" And Ed. Walker, who was striking the cleaver, immediately answered, "It flew from the cleaver." The court refused to let these statements go to the jury, and we are of the opinion that it erred in so refusing, as they were uttered at a time and under circumstances which clearly rendered them a part of the res gestae. In Vol. 24 Am. & Eng. Ency. of Law, page 665, it is said:

"The principle upon which the admission of such evidence rests is that the declarations may be made so soon after the happening of the principal fact, and be so intimately interwoven therewith by the surrounding circumstances as to raise a reasonable presumption that they are the spontaneous utterance of thoughts created by and springing out of the transaction itself and to exclude the presumption that they are the result of premeditation and design."

See also the cases of Louisville Ry. Co. v. Johnson's Admr., 131 Ky., 297; McLeod v. Ginther's Admr., 80 Ky., 399; L. & N. R. R. Co. v. Molloy's Admx., 122 Ky., 219, and Floyd v. Paducah Railway & Light Co., 23 Ky. Law Rep., 1077. Appellant testified that he did not know the condition of the cleaver until after he was struck; that he was looking at the person striking it; that after he was injured he looked at the cleaver and discovered that the top, the place it was struck with the sledge hammer, was battered, rolled over and hanging on the sides. One or two other witnesses made the same statement with reference to the cleaver. Two stated that the steel could not and did not come from the rail.

Appellant filed an affidavit in which he stated that George Baker would testify that he saw the cleaver before and after appellant's injury; that it was so battered that a part of the edge hung over "so as to make it likely that a piece would fly therefrom when it was struck with a sledge hammer." The court refused to allow the whole of this affidavit to be read to the jury, and appellant objected and excepted. The clause, "so as to make it likely that a piece would fly therefrom when it was struck with a sledge hammer," was eliminated. We are

of the opinion that the court was correct in so ruling, as the clause only expressed an opinion of a witness who was not shown to be an expert in regard to such matters.

Appellant introduced Dr. J. A. Stucky, the physician in charge of the hospital in Lexington, who removed the piece of steel from his eye-ball the day after the injury, and he described the steel as follows:

"A piece of metal in an irregular square shape; one side of it brighter than the other, the smooth side."

The testimony shows that this cleaver furnished by appellee's foreman to the hands to labor with, was in a bad condition, and there is nothing in the record indicating that any care was taken to furnish reasonably safe or suitable tools. As there was testimony tending to show that the steel which entered appellant's eye came from the cleaver, the case should have been submitted to a jury under proper instructions.

The claim is made that if there was negligence, it was that of a fellow servant for which appellant can not recover. The negligence in this case, if any, consisted in the furnishing by the master, of defective and unsafe tools to its servants with which to labor. It is the duty of the master to furnish its employes reasonably safe and fit tools with which to labor, and this duty can not be delegated to a servant so as to relieve the master from responsibility.

In facts of the case of L. & N. R. R. Co. v. Roberts, 24 Ky. Law Rep., 1160, were very similar to those in the case at bar. In that case the master furnished the servants a spike maul to strike a clawbar and drive it under the heads of spikes so that they could be pulled. In hitting the clawbar with the maul, a splinter flew from it and struck Roberts in one of his eyes, seriously impairing his vision. In that case the court instructed the jury as follows:

"It was the duty of the master to furnish safe and suitable tools for these workmen, and that if it failed to do so, and the defect in the spike maul so furnished was known to the master, or it could have known it by the exercise of ordinary and reasonable care, and that appellee did not know of such defect, if defect there was, the jury should find for the plaintiff."

Roberts recovered a judgment below and it was affirmed by this court.

In view of the authority just cited and the facts of this case, we are of the opinion that the lower court erred in giving the peremptory instruction.

For these reasons, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.