## Commonwealth, for the use of v. Manuel, Executor.

(Decided January 28, 1919.)

### Appeal from Lewis Circuit Court.

1. Wills—Lapsed Legacies.—Under section 4843 of the Kentucky Statutes providing that where a devise of property has failed or is otherwise incapable of taking effect it shall not be included in the residuary devise but shall pass as in case of intestacy, where a devisee, who has been given the fee, dies before the testator, the property devised passes under the statute as if the testator had died intestate as to it.

2. Wills—Construction of—Intention.—The most prominent and controlling rule in the construction of wills is that the intention of the testator as it may be gathered from what is written in the whole will is absolutely controlling where the intention so gathered does not conflict with some rule of law.

3. Wills—Construction of—Must be Read as a Whole.—The will must be read as a whole and particular clauses, if in conflict with the intention of the whole instrument, must give way to this intention and be construed if possible in harmony with it.

4. Wills—Construction of—Extrinsic Evidence—When Admissible.— Extrinsic parol or written evidence is not admissible for the purpose of ascertaining what the testator intended to but did not say, or for the purpose of altering or contradicting the terms of the will or adding to or substracting anything from it.

5. Wills—Construction of—Extrinsic Evidence—When Admissible.— But extrinsic evidence is competent for the purpose of showing the circumstances and conditions surrounding the testator at the time the will was executed, and his relations to the devisees and those excluded when the circumstances and conditions and such relations throw pertinent light on what the testator intended by what he did say in his will.

6. Wills—Construction of—Extrinsic Evidence—Admissibility of.— Extrinsic evidence is admissible not only to explain latent ambiguities in the instrument but to aid the court in arriving at the intention of the testator when upon a reading of the whole will the mind is left in doubt as to what the testator meant to say by what he did say, no matter what the nature or character of the defect or ambiguity in the arrangement, construction or phraseology of the will this doubt may arise from.

7. Wills—Construction of—Extrinsic Evidence—When Admissible.— Where the meaning of the will is so plain and the intention so clear as not to leave room for two opinions as to either, extrinsic evidence is neither needed nor admissible.

8. Wills—Construction of.—Where testator in one clause gave to his wife "the entire remainder of my estate, including all bonds, notes, accounts, mortgages, choses in action and other personal effects of whatsoever kind or character I may be seized, possessed or entitled to," this clause, standing alone, would give the wife a fee, and upon her death before the testator it would pass under section 4843 of the Statutes as undevised estate; but when read in connection with clause 7 of his will in which he provided that "should there be any of my estate remaining after the foregoing provisions shall have been carried into effect," the wife took only a life estate under clause 4, and at the death of the testator it passed to the residuary devisees, according to the intention of the testator as expressed in the whole will.

9. Wills—Construction of—Life Estate With Power to Use More Than Principal.—The wife was given in clause 4 more than an ordinary life estate but less than a fee. She had the right to use not only the income but so much of the principal as might be needed and what was left passed to the residuary devisees.

SHIVELEY & VANCE, H. W. COLE and ALLEN D. COLE for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

On June 26, 1900, George M. Tolle made his last will and after his death, in July, 1911, it was probated in the Lewis county court.

In the first clause he made provision for the payment of his debts.

In the second he gave to his wife, Nancy E. Tolle, all of his real estate "to use, occupy, hold, enjoy and control, together with all rents and profits thereof, for and during the term of her natural life."

In the third clause he provided for the payment of his funeral expenses and the erection of a monument.

In the fourth clause he said: "Subject to the provision hereinabove mentioned, that is to say, after the payment of my just debts, funeral expenses, and erection of the monument and iron fence at our burial lot, unless the same shall have been placed there during my lifetime, I give, devise and bequeath to my said wife the entire remainder of my estate, including all bonds, notes, accounts, mortgages, choses in action and other personal effects of whatsoever kind and character I may be seized, possessed or entitled to."

In the fifth clause he directed that at the death of his wife the real estate be sold, and "the proceeds be appropriated and distributed as hereinafter stated." And then after setting apart a sufficient sum to pay the debts and funeral expenses of his wife he gave fifteen hundred dollars to the Methodist church, of which he was a member.

In the sixth clause he directed that after "the above provisions shall have been made I will and desire that my executor or other personal representative pay and deliver to each of the following named persons the sums respectively mentioned, to-wit: To Mellie Manuel, three hundred dollars ($300.00); to Aggie Manuel, two hundred dollars ($200.00); to Mattie Manuel, three hundred dollars ($300.00); to Fanny Thompson, three hundred dollars ($300.00); to Mat Thompson, three hundred dollars ($300.00); to Bruce Thompson, two hundred dollars ($200.00); to Nellie Thompson, two hundred dollars ($200.00); to Nannie Thompson, two hundred dollars ($200.00); to Ross Thompson, two hundred dollars ($200.00); to G. M. Tolle, Jr., one hundred dollars ($100.00); to P. E. Darnell, two hundred dollars ($200.00); to D. C. McNeal, one hundred dollars ($100.00). In case that there be not sufficient estate to pay

each of the twelve foregoing bequests in full, then in that event each of the said devisees shall have and receive his or her proportionable share according to' the sums indicated to them respectively.''

In the seventh clause he provided that ''Should there be any of my estate remaining after each and all of the foregoing provisions shall have been carried into effect, I will, bequeath and devise the same to Mellie Manuel, Aggie Manuel, Mattie Manuel and Mat Thompson, each sharing equally in amount of said remainder, if any. The latter sum shall not, however, be determined and paid to the four last mentioned devisees or either of them until after the death of my wife's mother, Jane Gilbert, whom I desire to be supported and maintained out of my estate during her natural life. . . . In case that either of said last named twelve devisees be dead at the time this distribution is to be made his or her respective share shall pass to the lawful child or children, if any, of such decedent, but if there be no such child or children then such share shall go to the other said devisees or the lawful child or children of either, as the case may be.''

Nancy F. Tolle, the wife of the testator, died after the execution of the will but before his death, and upon the death of George M. Tolle, who died without leaving children or their descendants, W. R. Manuel, who was appointed in the eighth and last clause, executor of the will, qualified as such and sometime thereafter the appellants here, who are the children of the brothers and sisters of George M. Tolle and his only heirs at law, brought this suit against the executor to recover for their use and benefit about seven thousand dollars, the amount that Nancy E. Tolle, the wife of the testator, was given under the fourth clause of his will.

The suit was brought and a recovery sought upon the theory that Mrs. Tolle was given the fee in the estate mentioned in clause 4, and as she died before the testator the estate bequeathed to her passed upon his death to his heirs at law under section 4843 of the Kentucky Statutes, reading as follows: ''Unless a contrary intention shall appear by the will such real or personal estate, or interest therein, as shall be comprised in any devise in such will which shall fail or be void, or otherwise incapable of taking effect, shall not be included in the residuary devise contained in such will, but shall pass as in case of intestacy.''

The lower court dismissed the petition of the heirs at law and they bring the case here.

The argument of counsel for the heirs at law is that by the fourth clause of the will the testator gave to his wife a fee simple estate in the property therein mentioned and as she died before he did the estate mentioned in this clause should be treated under the statute as if the testator had died intestate thereto, and this being so, his heirs at law were entitled to it. On the other hand, the argument for the executor is that Mrs. Tolle took only a life estate in the property described in clause 4 of the will and this being so, at the death of the testator it passed under clause 7 of his will as a part of the residuary estate to Mellie Manuel, Aggie Manuel, Mattie Manuel and Mat Thompson, the persons named in clause 7 as the residuary devisees and legatees.

Before, however, coming to consider the construction of the will for the purpose of determining which of these views should obtain we think it well to set down a few rules for the construction of wills that are firmly fixed and have been long and consistently adhered to by this court as well as others.

Among these rules the most prominent and controlling one is that the intention of the testator as it may be gathered from what is written in the whole will is absolutely controlling where the intention so gathered does not conflict with some rule of law.

Another rule is that the will must be read as a whole and particular clauses, if in conflict with the intention of the whole instrument, must give way to this intention and be construed if possible in harmony with it.

Another rule is that extrinsic, parol or written evidence is not admissible for the purpose of ascertaining what the testator intended to, but did not say, or for the purpose of altering or contradicting the terms of the will or adding to or subtracting anything from it, but such evidence is competent for the purpose of showing the circumstances and conditions surrounding the testator at the time of the execution of the will and his relation to the devisees and those excluded when the circumstances and conditions and such relations throw pertinent light on what the testator intended by what he did say in his will. In other words, this character of evidence is admissible for the purpose of enabling the court to put itself as nearly as can be in the position of the testator at the time he wrote the paper so that it may

be assisted in appreciating and understanding what he intended to say by what he said.

Out of a multitude of illustrative cases in which the rules we have announced have been fully stated, we select the following:

The leading case in the United States on this subject is Smith v. Bell, 6 Peters 68, 8 Law Ed. 322. In that case, as it appears from the opinion one Brittain B. Goodwin in his will said: "I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and of what nature, kind and quality soever, after payment of my debts, legacies and funeral expenses, which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely; the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin; and I do hereby constitute and appoint my said wife, Elizabeth Goodwin, sole executrix of this my last will and testament." After his death, his widow, Elizabeth Goodwin, took possession of all the personal estate of the testator and had the same in her possession when she intermarried with Robert Bell; and after this she and her husband, Bell, retained the estate until Elizabeth Goodwin Bell died. After her death the question before the court was "whether, by the will of said Brittain B. Goodwin, said Elizabeth Goodwin had an absolute title to the personal estate of said Britain B. Goodwin, or only a life estate; and also, whether said Jesse Goodwin, by said will, had a vested remainder that would come into possession on the death of said Elizabeth, or was said remainder void?"

In determining this question and in holding that Elizabeth Goodwin took a life estate in the property and Jesse Goodwin the remainder in fee, the court, speaking through Chief Justice Marshall, said: "The first and great rule in the exposition of wills (to which all other rules must bend) is that the intention of the testator expressed in his last will shall prevail, provided it be consistent with the rules of law. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of a man's intentions, which he wills to be performed after his death.' These intentions are to be collected from his words, and ought to be carried into effect if they be consistent with law.

"In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning in which the testator used them."

It is further said: "It must be admitted that words could not have been employed which would be better fitted to give the whole personal estate absolutely to the wife, or which would more clearly express that intention."

And further it is said: "It is impossible to read the will without perceiving a clear intention to give the personal estate to the son after the death of his mother. 'The remainder of the said estate, after her decease, to be for the use of the said Jesse Goodwin.' Had the testator been asked whether he intended to give anything by this bequest to his son, the words of the clause would have answered the question in as plain terms as our language affords.

"If we look to the situation of the parties, to the motives which might naturally operate on the testator, to the whole circumstances, so far as they appear in the case, we find every reason for supporting the intention, which the words, giving effect to all, of themselves import.

"The only two objects of the testator's bounty were his wife and his son. Both must have been dear to him. . . ."

". . . All his feelings would prompt him to make, as far as was in his power, a comfortable provision for his wife during her life, and for his child after her decease. This he has attempted to do. No principle in our nature could prompt him to give his property to the future husband of his wife, to the exclusion of his only child. Every consideration, then, suggested by the relation of the parties and the circumstances of the case, comes in aid of that construction which would give effect to the last as well as first clause in the will, which would support the bequest of the remainder to the son, as well as the bequest to the wife. It is not possible to doubt that this was the intention of the testator."

In McClelland v. McClelland, 132 Ky. 284, this court, in laying down the rule that the intention of the testator must control and that it was admissible to show the situation of and the circumstances surrounding the testator, said: "This court has repeatedly decided that it is proper to consider the environments and the natural objects of the bounty of the testator, at the time of the making of the will, to enable the court to arrive at the intention of the testator in the construction of the will."

Again in Reuling v. Reuling, 137 Ky. 637, the court said: "In every case the intention of the testator must be sought, and to arrive at his intention we must construe the language of the will in the light of the circumstances surrounding him at the time the will was prepared.".

In Buschemeyer v. Klein, 139 Ky. 124, the court said: "In seeking the intention of the testator as to the construction and interpretation that should be placed upon ambiguous terms or clauses in a will, the relation of the parties, the nature and situation of the subject matter, the purpose of the instrument, and the motives which might reasonably be supposed to influence him in the disposition of his property may properly be considered. . . . The construction of a will, or any of its provisions, must be controlled by the intention of the party making it, and when that intention is ascertained from the whole instrument it should be adopted, and no rule of construction will be allowed to defeat the expressed or plain intention of the testator. General rules of construction will be followed when not inconsistent with the manifest intention of the testator; but, says Mr. Redfield: 'The court will place themselves as far as practicable in the position of the testator and give effect to his leading purpose and intention as indicated by the words of the will construed with reference to all attending circumstances,' "

Further it is said: "In the interpretation of a will, 'the intention of the testator is the first and grand object of inquiry, and to this object technical rules are, to a certain extent, subservient;' and when ascertained, and not contrary to law, it is controlling . . . The intention may be gathered from the instrument itself, as well as from the relation of the testator to the parties in interest, his family arrangements, and the circumstances which surround them. . . . The intention is to be

gathered from all parts of the will taken together, and not from detached portions. . . . And, to ascertain the intention of the testator, it is sometimes admissible to change the language of the will, to discard words as surplusage when they appear to be without meaning as used, to supply words, to transpose words, sentences, phrases and even paragraphs.''

In Watkins v. Bennett, 170 Ky. 464, the court said: ''In determining what is the proper construction to be placed upon the provisions of a will, it is a rule of substantially universal application that the intention of the testator, expressed in his will, must prevail, provided that intention is not inconsistent with the established rules of law. The courts must ascertain the intention of the testator and give it effect, if the intention is not contrary to law. . . .

''In arriving at the intention of the testator, the entire will and all of its provisions will be looked to, and if there are ambiguous terms or ambiguous clauses in a will, to ascertain the proper interpretations of them, the motives which can reasonably be supposed to have actuated the testator, the purpose of his making a will, the relations existing between the testator and devisees, the nature of his property, and the amount of it, may be looked to in aid of the language in ascertaining the intention of the testator.''

In Stephens v. Walker, 8 B. Monroe 600, in speaking of the admissibility of extrinsic evidence, the court said: ''Extrinsic evidence of the condition and circumstances of the property devised, and of the testator and devisee, is no doubt admissible, to aid in ascertaining the intention of the testator.'' And that ''Extrinsic evidence of the intention is inadmissible for the purpose of supplying a devise or any other material provision, omitted by mistake, or to superadd any qualification to the terms used, or to evince a mistake in writing the instrument.''

It is also said that, ''To allow parol evidence to be introduced to vary the meaning of wills, by showing a different intention on the part of the testator, from that expressed in the will, would be in violation of a well established rule of evidence, and in direct opposition to the statute requiring wills devising real estate and slaves to be in writing. And although evidence of the situation and circumstances of the testator and devisee, and of the character and nature of the subject matter of the

devise may be adduced, to enable the court, by placing itself in the position of the testator, to arrive at a correct knowledge of his meaning and intention, and thereby place a proper construction on the will, yet such evidence is admissible only for the purpose of aiding in the construction of the language used, provided there is sufficient indication of intention appearing on the face of the will to justify its application. The inquiry must be confined to the meaning of the words used; and hence, all extrinsic evidence tending to prove, not what the testator has expressed, but what he intended to express, is inadmissible.''

In Allen v. Vanmeter, 1 Met. 264, the court said: ''It is now well settled that evidence of extrinsic facts is admissible in aid of the exposition of wills, although they are by statute required to be in writing, and are, for that reason, peculiarly within the general principle which excludes parol evidence which tends to contradict, add to, or explain the contents of written instruments. But this extrinsic evidence must always be such as, in its nature and effect, simply explains what the testator has written, and not what he intended to have written. In other words, the question in expounding a will is not what the testator actually intended, as contradistinguished from what his words express, but what is the meaning of the words he has used.''

It will, as we think, readily appear from these cases that the contention made by counsel for the heirs at law that the evidence offered and heard by the court in this case to show the circumstances surrounding the testator and his relations to his heirs at law as well as the two girls, whom he took to raise, and their children, was not admissible because there was no latent ambiguity in the will to be explained by parol evidence is not well taken. In no one of the cases referred to was there a latent ambiguity in the wills construed. For example, the will in the Bell case was perfectly free from any latent ambiguity and yet in that case the Supreme Court of the United States said parol evidence was permissible for the purpose indicated, and so in the other cases referred to.

Indeed so far as our investigation goes there is no difference of opinion in the books on the subject that extrinsic parol evidence of the character mentioned is admissible, not only to explain latent ambiguities in the in-

strument but to aid the court in arriving at the intention of the testator, when upon a reading of the whole will the mind is left in doubt as to what the testator meant to say by what he did say, no matter what the nature or character of the defect or ambiguity in the arrangement, construction or phraseology of the will this doubt may arise from. Of course if the meaning of the will is so plain and the intention so clear as not to leave room for two opinions as to either, there could be no need for evidence to explain the one or elucidate the other.

But it often happens that wills, free from any latent ambiguity and also free from patent imperfections or omissions, are yet so worded or arranged as to leave in doubt what the testator intended by what he said, and in all such cases extrinsic parol or written evidence showing the circumstances that surrounded him at the time of the execution of the will, his relation to the devisees, and other pertinent things, is competent to throw light on what he intended by what he did say. The will here in question furnishes a good illustration of what we mean. It is free from latent ambiguity and does not disclose any patent ambiguity, but yet it is so inaptly worded and arranged as to leave in doubt what the testator intended by what he said; but this doubt is removed when the court has an opportunity to read the will in the light of the circumstances surrounding the testator when it was written.

Coming now to the evidence, it shows without contradiction that George M. Tolle and his wife, Nancy, were married in 1861, and no children were ever born to them; that a few years after their marriage they took into their home two little girls named Mellie and Fannie Highfield; that they reared, educated and supported these two girls until they respectively married—Mellie to W. R. Manuel and Fannie to William Thompson; that Mellie is yet living and that Fannie died in 1908; that Mr. Tolle and his wife treated these girls at all times, both before and after they married, precisely as if they had been their own children; that after these girls married they settled in the neighborhood where Mr. Tolle lived and there their children, who are named in the sixth and seventh clauses of the will, remained and were living when Mr. Tolle and his wife died.

These two girls and their children were the natural objects of the testator's bounty. They were the per-

sons, with the exception of his wife, who were closer and dearer to him than any other, and they were the persons who it might reasonably and naturally be expected he would desire should be the beneficiaries of his estate when he and his wife died. The relations between the testator and his wife and the heirs at law, who are the children of the brothers and sisters of the testator, were never intimate or cordial. But the most conclusive evidence of the fact that the Manuels and the Thompsons were the natural objects of his bounty and the persons who he desired should have his estate after the death of his wife, is found in the will itself.

In this will, with the exception of one hundred dollars given to George M. Tolle, Jr., and one hundred dollars given to D. C. McNeal, not one cent's worth of property did he give to any of his heirs at law. The whole of it, except these two items and the sum given to the Methodist church, was bequeathed to his wife and the Manuels and Thompsons.

In the light of the law as we have stated it, and the undisputed facts as we have recited them, we now turn to the will to determine from it whether it was the intention of the testator to give his wife, by clause 4, the fee or only a life estate, with the remainder to the residuary legatees named in clause 7.

Standing alone and considered by itself without reference to the circumstances surrounding the testator at the time he made his will or the other clauses of the will there could be no doubt that under clause 4 the wife was given the fee simple title in the property therein mentioned, and it would of course necessarily follow from the statute that the heirs at law and not the residuary legatees would be entitled to this property.

But under all the authorities this clause should not be read alone, but in connection with and as a part of every other clause in the will, and then the whole will read in the light of the circumstances surrounding the testator, and with these aids his intention arrived at.

It will be observed that the testator, in clause 2, gave to his wife for life all of his real estate, and in clause 4, after the payment of debts, funeral expenses and the cost of a monument, the entire remainder of his estate of every kind and character. Plainly his wife was the first object of his bounty. He desired that she should be amply provided for during her life. She was not limited

to a life estate in the property described in clause 4, nor was she given the fee in this property. She was given the right to use all of it that she might need or desire to use. No limitation was placed upon her power to do this. She had in this property mentioned in clause 4 more than an ordinary life estate but less than the fee. In many wills clauses of this kind are found and when they are it is the uniform rule to construe them as giving to the devisee more than a life estate but less than the fee, or in other words, the right to use not only the income but so much of the principal as may be needed, and when all that has been needed is taken, what is left to pass to those who take in remainder. Examples of cases like this are: Anderson v. Hall, 80 Ky. 91; McClelland v. McClelland, 132 Ky. 284.

At the death of the widow the real estate in which he had a life interest was to be sold and disposed of as provided in clause 5, and then he said in clause 7 that if there should be any of "my estate remaining after each and all of the foregoing provisions shall have been carried into effect, I will and bequeath the same to Mellie Manuel, Mattie Manuel and Mat Thompson.

It will be observed that he did not say if there was any of his "real estate" remaining, or describe the estate that might remain, but he used words broad enough to embrace any kind of estate that might remain after the "other provisions" in his will had been satisfied, and plainly we think the testator had in mind in using the words "my estate remaining," whatever might remain out of the estate given to his wife in clause 4, after she was satisfied, as well as what might remain of the real estate after the charges on it had been satisfied. The testator had in mind that his wife might not need or use all he had given her in clause 4, and if she did not he wanted the Manuels and Thompsons to have what was left. This clause 7 is not to be limited to real estate. There is nothing in it or the will that would justify such limitation.

It is further plain that the testator intended to dispose of his whole estate, and it is equally clear that he did not intend that his heirs at law should have any of it except the small legacies he gave them, and to say that the bulk of his estate should now be taken from the objects of his bounty as expressed in the will and given by some technical construction to persons whom he did

not intend to have any of it, would do violence to the manifest intention of the testator as gathered from the whole instrument.

It may be true that by taking a narrow view of the will the construction contended for by the heirs at law would prevail, but when the whole will is looked at and all the competent and pertinent facts considered, there seems to us little room for dispute as to its proper construction.

According to our views as herein expressed the statute relied on by the heirs at law has no application because there was no undevised estate upon which the statute could operate.

Wherefore the judgment is affirmed. Whole court sitting.