## Johnson et al. v. Foley et al.

October 1, 1946.

Sam P. Strother for appellants.

Henry T. Duncan and D. L. Pendleton for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

Appellees, Charles Watson Foley and Fauntley Miller Foley, are the children, and appellee Mary G. (Lucy) Foley is the widow, of C. Miller Foley, who died testate May 13, 1945. Appellant Charles William Foley, an infant under fourteen years of age, is the son of appellee Charles Watson Foley. Mr. Foley's will, which was duly probated, is in the following language:

"November 20th 1942

"The following is my will.

"1st. I want my wife, Lucy Gay Foley, to have all of my personal property except a clock that I want my son Charles to have.

"2nd. I want my son, Fauntley Miller, to have all of my real estate and to assume any debt that may be on the farm in Woodford County. He (Fauntley) is to have this in fee simple.

"3rd. For the above consideration he (Fauntley) to take care of his mother her natural life unless she should marry again and that case shall be *leaved* of his responsibility.

"4th. Should Fauntley Miller die and wife (Lucy) survive him all of my property BOTH personal and real shall be hers in fee simple.

"5th. Should Both my wife (Lucy) and my son (Fauntley Miller) Die leaving no survivors my property shall be conveyed to my son Charles Watson Foley his. Life Time and to his children if any survive him.

"6th. I hereby appoint my son Fauntley Miller Foley executor With Out bond unless my wife survive him in that case she shall become executrix with out bond.

"7th. The above Will I deem to be fair and the difference I have made is because of the considerations I have received more from one than the other.

"8th. I have no other Will and I feel that this instrument is all is necessary to settle my estate.

"(Signed) C. Miller Foley

"Witnesses

"Charles D. Eubank
"Vernon Hughes"

At the time of his death, Mr. Foley owned a tract of land in Woodford County, which appellees, in writing, agreed to sell to appellants, William R. Johnson and Catherine T. Johnson, his wife. Thereafter, appellees tendered to the Johnsons a deed conveying the land and demanded payment of the purchase price. The Johnsons refused to accept the deed or to pay the purchase price, upon the ground that appellees are unable to convey a fee-simple title to the property. Thereupon, appellees instituted this action under Section 639a—1 et seq., of the Civil Code of Practice, seeking a declaration of their right to convey a fee-simple title to the property. The decision requires a construction of the will, and a determination of the character of estate received by Fauntley Miller Foley in the real estate of his father, under the terms thereof. Appellants contend that Fauntley was devised a defeasible fee, with contingent remainders or executory limitations in favor of Mary G. Foley, Charles Watson Foley, and the children of Charles Watson Foley, a class, the identity of whose members can not be ascertained until the happening of the events which may convert the contingent remainder into an estate in fee simple. Appellees contend, and the Court decreed, that, upon the death of his father, Fauntley became vested with a fee-simple title by the terms of the will.

KRS 381.080, which ordinarily controls the question presented, is not applicable to this case, because Item 2 of the will clearly expresses a purpose different from the construction called for by that section; although Item 4 gives us pause in determining the character of the estate devised to Fauntley by the will as a whole.

The common-law rule that at one time was followed by this Court now has been abandoned. That rule is that, where the testator first devises a fee-simple title, he can not later in the same will limit the fee by other dispositions, upon the theory that, having disposed of

the entire estate by an absolute devise, nothing remained in the testator upon which a limitation could be placed. We have departed from this rule because it conflicts with the cardinal rule of construction of wills now almost universal in its application, viz., the Court will look to the four corners of the will to determine the intent of the testator, and will give due weight to every provision of the will, and determine what the testator intended to say by what he did say. In this connection, if a patent ambiguity alone exists, the intention of the testator must be resolved alone from the language employed by him in the will, and extrinsic evidence may not be admitted to change the construction, Smith v. Smith, 72 S. W. 766, 24 Ky. Law Rep. 1964; whereas, the Court will permit evidence to be introduced concerning the circumstances and conditions surrounding the testator at the time the will was executed, if such is necessary or expedient to clarify a latent ambiguity, Daniel v. Tyler's Ex'r, 296 Ky. 808, 178 S. W. 2d 411. But even where a will is free from any latent or patent ambiguity, yet is so imperfectly worded or arranged as to leave in doubt the intent of the testator by what he said, evidence of the circumstances surrounding the testator, at the time of the execution of the will, the relationship existing between him and his devisees, and perhaps other pertinent facts, is competent to clarify the imperfections or supply the omissions in an endeavor to determine what the testator intended to say in the use of the words he employed in drafting the will. An exhaustive history of the development of this principle is contained in this Court's opinion in Commonwealth v. Manuel, 183 Ky. 48, 208 S. W. 327.

It is apparent Mr. Foley omitted words which, if inserted in the will, clearly would have indicated his intent to devise either the fee or a life estate to Fauntley. Had he inserted the words, "within my lifetime", after the word "die" in clauses four and five, there could be no doubt that he would have intended Fauntley to take the fee if the latter survived him. Had he inserted the words, "at any time", after the word "die" in clauses four and five, little doubt could have been entertained that he intended Fauntley to take a life estate merely; although clauses four and five then would conflict with clause two. It is apparent, therefore, the will is so imperfectly drafted, by reason of omissions, as to

invoke the rule pronounced in Commonwealth v. Manuel, supra, viz., to permit evidence to be introduced to show the circumstances surrounding the testator at the time of the execution of the will, the relationship existing between him and his devisees, and such other facts as may be helpful to arrive at the testator's intent.

Coming now to the evidence, we find, without contradiction, that at the time he drafted and executed his will, and continuously thereafter until his death, the testator was the victim of severe attacks of asthma. This condition required him constantly to remain in an air-conditioned room, outside of which he was unable to breathe sufficiently to sustain his life. He was very fond of his only children, Fauntley and Charles, until a year or so before he executed the will. When World War II commenced, Fauntley was inducted into the armed services, and Charles engaged himself to work in a defense plant in another state. Fauntley was sent overseas; Charles was required to work seven days a week, which rendered it virtually impossible for him to visit his father. Mr. Foley realized that Fauntley could not visit him, but never could understand the reason for Charles being unable to do so; and in his condition of health, he became obsessed with the thought that Charles was neglecting him and not showing him the consideration due a father from a dutiful son. The evidence as to this frame of mind is corroborated by the seventh clause of the will, in which he recited: "The above Will I deem to be fair and the difference I have made (between his two sons) is because of the considerations I have received more from one than the other."

That the testator was thought by his family to be suffering under an illusion as to the affection borne him by Charles is evidenced by the fact that, after his death, Fauntley deeded to Charles one-half of the property he conceived he took by the terms of his father's will. He did this in order to right an injustice growing out of a distortion of the true facts in his father's mind. It is shown additionally by the evidence, and conclusively so, that the testator was familiar with the legal meaning of a fee-simple estate in contradistinction to a life estate. Finally, the proof shows that the testator feared Fauntley would not survive the war.

Before reciting the reasons for our conclusion that

the lower Court properly construed the will, it is important to call attention to another rule of construction in respect to instruments of this character, and which has been applied by this Court continuously throughout its existence. The rule is: Where the estate devised may be defeated upon the happening of a contingency, and the period of time in which the event shall occur is not apparent, it will be presumed that the testator referred to an event to happen in his lifetime and not thereafter. Prewitt et al. v. Prewitt et al., 178 Ky. 346, 198 S. W. 924, and the many cases therein cited. The reason for the rule is that the law favors the early vesting of a fee-simple estate, and all doubt will be resolved in this favor unless a contrary intent is indicated by the words used by the testator. In Washer's Ex'r v. Washer's Ex'rs, 143 Ky. 645, 137 S. W. 227, the Court quoted the following language from Carpenter v. Hazelrigg, 103 Ky. 538, 45 S. W. 666, 20 Ky. Law Rep. 231 (143 Ky. 645, 137 S. W. 230): " 'Where a devise is made to several persons by name, with words of survivorship annexed, if the gift is to take effect in possession immediately after the death of the testator, the uniform rule of construction is to refer the words of survivorship to that event and to regard them as intended to provide against the contingency of the death of the object of the testator's bounty in his lifetime.' "

We will now consider the will in the light of the authorities and evidence above recited. If testator knew what a fee simple is, and the evidence shows he did, he must have known that he could not devise a fee simple and, at the same time, a contingent life estate and contingent remainder in the same property. But he likewise must have known that he could devise a fee and a contingent life estate with contingent remainder or executory limitation, if a circumstance could arise whereby the fee might not vest. He also must have known that the only event which could happen to defeat the vesting of Fauntley's fee, if he intended one to vest, would be the death of Fauntley before the death of the testator himself, and the evidence shows he was apprehensive of the happening of such an event. One thing at least is apparent from the will, and that is that the testator considered his wife to be the foremost object of his bounty, because, under any construction which may be given, the widow must be maintained for life. He re-

posed such confidence in Fauntley that he was certain that provision would be carried out by the latter; but, unfortunately and without reason it seems to us, he did not have the same confidence in Charles—so he provided for the first object of his bounty if Fauntley should not survive him, by directing that the widow should take a fee-simple title if she in turn survived him. But he was not devoid of feeling or sentiment for Charles, and he then provided that Charles and his issue be cared for, but only, we think, in the event that the two dearest objects of his bounty were no longer in existence. We therefore conclude that, since Fauntley survived his father, he became vested with the fee-simple title to the property in question, under clause two of Mr. Foley's will.

This construction gives full force and effect to each and every rule of construction we have referred to. In the light of the evidence, it looks to the four corners of the will and gives full force and effect to every provision thereof. It recognizes the rule that, where an estate is given by will, which may be defeated upon the happening of a contingency, and there is no other period apparent in which the event shall occur, such provision will be construed to refer to an event happening in the lifetime of the testator. And finally, if we entertained a doubt as to the intent of the testator, we would be constrained to resolve such doubt in favor of the early vesting of the fee instead of the lesser estate.

The judgment is affirmed.