## Meredith v. Meredith et al.

March 7, 1950.

A. J. Bratcher, Judge.

N. Goebel Goad for appellant.

Noel F. Harper and Coleman, Harlin & Willock for appellees.

MORRIS, COMMISSIONER—Affirming.

Dr. H. M. Meredith, Sr., died testate in 1941 leaving surviving his widow and two sons, one of whom was plaintiff below, now appellant; the other son being joined as defendant with the mother and who are appellees here.

Dr. Meredith's holographic will, after providing for payment of debts, etc., reads:

"(2) I bequeath to my wife * * * all of my accounts for medical services, as exist on my books at my death, also all notes which were given for medical service, my office equipment, household goods, automobiles, stock or cash (H. M. M.) bonds, overall factory, tobacco warehouse and any other stocks or bonds which I may own at my death.

"(3) The real estate which I own and reside in * * *

I hereby bequeath to my wife in full, to sell, reside in or dispose of as she may desire.

"(4) I now own ½ interest in my father's farm on Long Creek (notes now in Farmers Bank) covering approximately the ¼ interest of my brother E. M. Meredith. This interest I also bequeath to my wife * * to occupy, sell or dispose of as she may desire.

"(5) My life insurance has been settled with the various companies, in the distribution of same. This settlement I desire not to be disturbed. However, any residue of my life insurance at the death of my wife shall be divided equally between my two sons (naming them) except that all money advanced each of them since their graduation in medical and dentistry shall be equalized in the final distribution of the insurance residue, this settlement based on evidence of notes or cancelled checks drawn on me by each of them.

"(6) Should my wife survive both of my sons, then at her death the residue of the life insurance in all companies or Government shall be distributed to my personal lineage. July 24, 1937."

It was not until March 1948 that appellant filed his petition in equity setting forth the facts above stated; filed a copy of the will asking the court for construction and for a declaration of present and future rights of the parties. His pleading alleges that Section 3 of the will is vague or uncertain, and that it only conveys to the widow a life estate in the property therein described. His position is that by the use of the words "in full," when considered in the light of Section 4, "which property is mentioned therein, testator had only a one-fourth interest with a note against another one-fourth interest, thus showing that he meant to distinguish by the use of the expression the difference in title that he owned, to each of the parcels of real estate referred to."

He further pleads in support of the contention that testator only intended to vest in the widow a life estate, with only the right to dispose of the real estate and reinvest the proceeds, that sections 4 and 5 mention personal property in the form of life insurance, its manner of prior settlement and provides for disposition of it upon the death of the widow. He takes the position that it was the real intention of testator to devise the pro-

perty to his wife "for her use, necessities and comforts during her life, with remainder" to the two brothers.

Defendants filed a combined general demurrer and answer, the demurrer being marked "Paragraph (1)"; the second paragraph is a general denial of all allegations of the petition. Paragraph (3) plead what appears to be, and no doubt so appeared to the chancellor, pure evidence, facts which if properly before us might be of import. General demurrer and motion to strike paragraph (3) were not acted upon until submission. Plaintiff replied by denying allegations of the answer, then pleads, as did the answer, evidence not relative to a construction of the will. The reply also pleads estoppel against defendants because they had asserted that the intent of the testator was to devise a life estate to the widow. Demurrers and motions to strike this pleading were made, and upon submission the chancellor overruled demurrer to the petition and struck all of paragraph (3) of the answer; overruled demurrer to defendant's answer, and struck paragraph (4) of plaintiffs' reply.

This state of pleadings left the only matter before the court the construction of the will, and while objections were made to the court's rulings as above indicated, appellant in brief waives all technicalities and discusses only the meaning of the will, as does counsel for appellee.

Upon final submission the chancellor adjudged (1) that under clause (2) the widow took absolute title to the accounts, office equipment, stocks, bonds and all mentioned in that clause. That under Clause (3) the widow was vested with fee-simple title to the residence property; by Clause (4) she became vested with fee-simple title to the undivided interest in testator's father's farm as well as the lien notes mentioned. As to items 5 and 6, the chancellor construed both to mean precisely what the testator said. Apparently the settlement with companies had been made prior to testator's death. This gives to the sons any residue of the proceeds of the life insurance policies, subject to equalization. There is no cross-appeal, but it is suggested in one of the briefs before us that on this question another lawsuit will result.

Appellant agrees that the rule is that the intent of the testator must be gathered from a reading of the en-

tire will. Hanks v. McDanell et al., 307 Ky. 243, 210 S. W. 2d 784. It is suggested that it is the policy of the law to so construe a will as to create a life estate, unless the document clearly manifests a different intention, citing McClelland's Ex'r v. McClelland, 132 Ky. 284, 116 S. W. 730. However, appellant fails to point to any part of the will in question which would lead to a conclusion that testator did not intend to vest his widow with absolute title to all property mentioned in the will. We find nothing in the will which indicates an intent on the part of the testator to limit the estate devised, and nothing which manifests an intention to create a remainder interest, except as to the proceeds of life insurance policies, and this is spoken of as a "residue" after the death of the wife. Apparently, as suggested somewhere in the record, the widow was beneficiary in all policies involved.

The only possible ground on which it might be argued that there is an implied intention to limit the estate devised, arises from the use of the words in relation to devises of real estate or interest therein, "to occupy, sell, reside in or dispose of as she may desire." However, it is the rule that in the absence of any words creating a limitation of the power to sell, dispose or transfer creates a fee. Scott v. Smith, 286 Ky. 697, 151 S. W. 2d 770; Kessee v. Smith, 289 Ky. 609, 159 S. W. 2d 56; Dudley v. Wallingford, 292 Ky. 390, 166 S. W. 2d 857.

There is another rule of construction applicable here, though mentioned only because of doubt on the part of parties as to the intent of testator as expressed in his will. The consistent rule is that in case of doubt as to character of estate devised, the doubt should turn in favor of an absolute rather than a qualified estate. Medcalf v. Whitely's Adm'x, 290 Ky. 94, 160 S. W. 2d 348, 140 L. R. A. 936; Johnson v. Foley, 302 Ky. 848, 196 S. W. 2d 733.

A careful consideration of the will before us leads to the conclusion that since there is no indication of an intent to create a remainder interest in the real and personal property (excepting insurance), the devises and bequests thereto vested the widow with title as found by the chancellor.

Judgment affirmed.