## GRESHAM v. DURHAM et al.

Court of Appeals of Kentucky.

June 23, 1954.

Rehearing Denied Oct. 1, 1954.

James F. Clay, Danville, for appellant.

Chenault Huguely, Danville, for appellees.

WADDILL, Commissioner.

Mrs. Olio Vera Gresham, appellant here-in, brought this suit to compel specific performance by appellee, Arlan B. Feather, of a contract to purchase two tracts of land in Boyle County from appellant. By way of answer and cross-petition, Feather asserted that appellee, Daisy Lewis Durham, was claiming an interest in the property and asked that she be joined as a defendant and that the rights of the parties be adjudicated. Olio Vera Gresham appeals from a judgment declaring her to have no interest in the property.

Appellant claims the land as devisee under the will of Sterling C. Brewer, who died in 1897 at the age of 81. His will reads as follows:

"I, S. C. Brewer of Boyle County, State of Kentucky, do make this my last will and testament to supercede all wills previously made by me.

"First: It is my desire that all my just debts and funeral expenses be paid, then I desire that my wife, Elizabeth Brewer, have all the cash then on hand and all the note (sic) and accounts due, also three shares of stock in the Citizens National Bank of Danville, Kentucky and I desire that she does not sell or dispose of said bank stock until the expiration of said banks charter, I further desire that she have all of my property both real and personal during her natural life, if she should have bodily heir or heirs the property shall go to them at her death and if she my wife, Elizabeth Brewer should marry again the property shall go to the heirs above named from the date of her second marriage.

"10th day of November 1897
/s/ Sterling C. Brewer"

Appellant was the only child of Elizabeth Brewer, and was therefore her only bodily heir. She was born out of wedlock about five years prior to the marriage of Sterling C. Brewer and Elizabeth Brewer. No one now alive knows the identity of appellant's father.

We are in accord with the opinion written by the learned trial judge, and incorporate it herein, as follows:

"In Corn v. Roach, 225 Ky. 725, 9 S.W.2d 1074, the court said:

" 'A court, in construing a will, is not confined to a mere definition of particular words employed, but is required to take a comprehensive survey of the entire will. The apparent objects operating to influence the testator's mind should be considered and the words used in the will given that reasonable construction best calculated to carry out the wishes of the testator as reflected by his will.'

" 'The fundamental rule in the construction of wills is that the intention of the testator, as gathered from his entire will, must prevail, unless it be opposed to some positive provision of the law, or some general principle of public policy. The entire will must be taken into consideration; each part and clause thereof must be read in connection with the other parts.' Wickersham v. Wickersham, 174 Ky. 604, 608, 192 S.W. 688, 690.

"When the language of the will is obscure and of doubtful meaning, the courts have the right, and it is their duty to place themselves by extrinsic testimony in the place of the testator at the time he made the will by showing the circumstances and conditions with which he was surrounded, and to determine from these the sense and meaning which he intended to convey by the language he employed. Prather v. Watson's Ex'r, 187 Ky. 709, 220 S.W. 532; Penick v. Lewis, 194 Ky. 231, 238 S.W. 745.

" '* * * it is a familiar rule in the construction of wills that a word may be substituted whenever it is necessary to do so in order to carry out what seems to be the plain intention of the testator.' Dockery's Ex'rs v. Dockery, 170 Ky. 194, 185 S.W.2d 849, 851.

" '* * * when it is evident that the testator has not expressed himself as he intended to have done, and supposed he had done, and the defect is produced by the omission of some word or words, and when it is certain beyond reasonable doubt what particular words were omitted, they may be supplied by intendment, and the will read and construed as if those words had been written in the will.' Aulick v. Wallace, 12 Bush. 531.

"This suit involves the construction of the will of Sterling C. Brewer, who died in 1897. His will was written in 1897, shortly before his death.

"After bequeathing to his wife, Elizabeth Brewer, certain personalty, the testator provided:

" 'I further desire that she shall have all of my property both real and personal during her natural life, if she should have bodily heir or heirs the property shall go to them at her death and if she my wife, Elizabeth Brewer should marry again, the property shall go to the heir or heirs above named from the date of her second marriage.' "

"The evidence shows that Mr. Brewer when he wrote the will was 81 years old. He had married about a year previously. He and his wife had no children. His real estate consisted of a house and lot in Parksville. His widow survived until about 1937, * * *. For many years before her death she had not lived in or near Parksville; at the time of her death she was in Massachusetts. The plaintiff, Mrs. Olio Vera Gresham, claims to be the daughter, and only heir, of Elizabeth Brewer, and the owner of this house and lot under Brewer's will. The defendant Mrs. Daisy Durham claims ownership of the property, under purchase from the heirs of Sterling C. Brewer, to the extent of 97% interest therein, several of those heirs, who are very numerous, not, at the time of her testimony, having delivered her conveyance of their interests.

"I think the evidence establishes that Mrs. Gresham is the child of Mrs. Elizabeth Brewer. She was born, according to the proof on her behalf, about five years before her mother married Mr. Brewer. She does

not know who her father was. There is no claim that her mother, at the time of her birth, was married to any one. She never saw Mr. Brewer; was never around where he and her mother lived. In fact, according to her testimony, she does not remember of ever seeing Mrs. Brewer until 1914, some 17 years after the death of Mr. Brewer. She was reared by a Mrs. Macy, in Atlanta, Ga. She lived with Mrs. Brewer for about 3 months in 1914, and never saw her again.

■ "There is no suggestion that Mr. Brewer was ever aware that his wife had this child. There is no intimation that he was the father of this child. Bearing in mind the fundamental requirement, that always the intention of the testator, as gathered from the entire document, must be given effect, it is my opinion that in providing that at the death or remarriage of his wife his property should go to her bodily heirs, it was his intention they should be her bodily heirs begotten by him. Here we have a man, if the will be literally construed as limiting the remainder to her bodily heirs no matter by whom begotten, giving his estate in remainder to one a stranger in blood and of whose existence he was evidently kept ignorant by his wife.

"As I have said, there is no suggestion that Mr. Brewer had any idea that his wife had a child. It would have been most singular for him to have made provision for a child that he did not know existed, and an absolute stranger to him. And it would have been even more singular for him to have indulged the suspicion his wife had been wayward before her marriage and had a child out of wedlock, and upon that suspicion to have made such a provision for any such child—though he did not know there was any child of that description. In the absence of any knowledge on his part that there was illegitimate child of his wife, and had his wife given birth to a child begotten by him and born in wedlock, would the fact that she also had this other child have justified construing this provision of the will as making the illegitimate daughter a devisee in remainder along with his own child? Clearly not. It would have been

construed as meaning only her child begotten by him because he did not know she had the child out of wedlock and it would be unreasonable to infer his intention to share his estate with one whom he did not know, of whose existence he was unaware, and who was a stranger in blood to him. It might be argued that the very fact that in the case supposed there would have been a lawful heir of her body, born of their marriage, would have conclusively shown it was his intent to provide only for that child. But it seems to me that under the admitted facts of this case the intent there to provide for his own child, to the exclusion of another's, is no stronger than the intent to be fathered here. If he were providing for the contingency of his wife having child by him, the fact that no such child was born does not alter the situation from what it would have been had the child been born. True, it is argued in the brief for the plaintiff that as Mr. Brewer was 81 years old it is unreasonable to believe he entertained the idea that there would be born to him and his wife a child. There is no evidence as to his state of virility. But as he had married just about a year before, and a woman evidently much younger than he, it is a fair inference that he regarded himself as capable of consummating the marriage at the time he entered upon it, and it is more in keeping with these circumstances to believe he indulged the hope of offspring than to infer he planned to make the unknown child of another man the beneficiary of his estate.

"Not only, in my judgment, do the extrinsic facts as disclosed in evidence compel the conclusion that this clause should be construed as referring to the bodily heir or heirs of Mrs. Brewer born of her marriage with Mr. Brewer, but the provision that should she marry again, then the property should go to the heirs previously named enforces that conclusion. Here unmistakably is evidenced a purpose to favor the heir or heirs over Mrs. Brewer. It is a purpose, I think consistent only with the idea that these remaindermen were to be his own blood, children of that marriage. If he intended for any child previously born to Mrs. Brewer, before her marriage to him,

to share as remainderman in his estate, why would he have desired such a stranger to his blood to oust his wife of her life estate upon remarriage? If the intention is to be imputed to him to provide for any child or children of Mrs. Brewer, whether his or another's, no reason suggests itself explanatory of his selecting as remainderman any child or children of hers born before his marriage to her and not extending his bounty in favor of any that might be born to her upon a second marriage. Evidently the reason for discriminating in favor of the bodily heirs of Mrs. Brewer as against herself or any children she might thereafter have upon remarriage, was to conserve the property for his own blood line. That is in keeping with his terminating her rights upon remarriage: when she ceased to be his widow, her rights under the will were at an end.

"In my opinion, this will should be construed as if it read 'if she should have bodily heir or heirs born of our marriage.' It follows that I conclude the plaintiff Olio Vera Gresham has no interest in this property."

After rendering this opinion, Judge Alcorn allowed appellant to amend her petition to assert title to the property by adverse possession. This claim was based on the fact that appellant's mother remained in possession of the property until 1937, although by the terms of the will her life estate was terminated upon her remarriage in 1913.

The circuit judge made a finding that the evidence showed that Mrs. Brewer never claimed more than a life estate in the property and entered a judgment declaring that Mrs. Gresham has no claim to the property and that Mrs. Durham is the owner thereof as vendee of the heirs of Sterling C. Brewer.

After a careful review of the case we think the judgment was correct.

Judgment affirmed.

MOREMEN, J., dissents.