LINCOLN BANK & TRUST COMPANY, Administrator, etc., Appellant,

v.

Ethel Wilder BAILEY et al., Appellees.

Ethel Wilder BAILEY et al., Appellants,

v.

LINCOLN BANK & TRUST COMPANY, etc., Citizens Fidelity Bank & Trust Company, etc., Appellees.

Court of Appeals of Kentucky.

Nov. 10, 1961.

Leo T. Wolford, Eugene B. Cochran, O. Grant Bruton, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for Lincoln Bank & Trust Co.

James W. Stites, James W. Stites, Jr., Louisville, for Citizens Fidelity Bank & Trust Co.

Squire R. Ogden, Richard F. Newell, John T. Ballantine, Ogden, Brown, Robertson & Marshall, Louisville, for Ethel Wilder Bailey.

PALMORE, Judge.

James B. Wilder died testate in 1888, survived by two sets of grandchildren, being the five children of his deceased son, Graham Wilder, and the four children of his deceased daughter, Emma Wilder Hast. This is an action to construe paragraphs 6 and 7 of his holographic will, by which the residue of a substantial estate was left in trust for the benefit of the nine grandchildren and their descendants until 21 years after the death of the last survivor among the grandchildren, at which time the corpus is to be distributed.

All of the grandchildren are now deceased except for Ethel Wilder Bailey, one of the five children of Graham Wilder. Her deceased sister and brothers are survived by a number of descendants. But all four of the Hasts died without issue, and what becomes of the 4/9 interest of which they were the beneficiaries is the issue in this case.

Louis Hast died intestate and unmarried in 1905, survived by his three sisters, Emma, Etta and Lisette. Emma died in 1942, leaving her estate by will to Etta and Lisette. Etta died in 1944, leaving her estate by will to Lisette. Lisette died in 1958, and her will left in trust for certain charitable purposes whatever interest in the Wilder estate was subject to testamentary disposition by her. Her personal representative takes the position that she was able to will a 4/9 interest in the income and corpus. The chancellor rejected this theory and held that upon extinction of the Hast line the 4/9 interest of which its members theretofore had been beneficiaries simply became a part of and thereby enlarged the interests of the Wilder line. We agree with that conclusion.

Here, with emphasis added, is the pertinent language of the will:

"6th I give devise and bequeath * * * in trust for my grand children (My children both being dead) To wit, Emma Hast Lizette Hast, Etta Hast and Louis Anderson Hast, and Nellie Wilder, James B. Wilder Jr, Oscar Wilder, Ethel Wilder and Edward Wilder Jr, all the residue of my Estate, real personal and mixed, and direct that it shall be held together as a whole, except such as I may hereafter direct or

authorise to be disposed of, until twenty one years after the death of my said grand children, who may be alive at my death and the last survivor of them, when it shall be divided *among the descendants of said grand children* or it may then be sold and the proceeds divided as aforesaid, *the shares of any one or more of them, having died without issue to go to his or her brothers and sisters or descendants, or if any be dead leaving descendants, such descendants to take the share of such grand child * * *.*"

"7th * * * the whole of said net profit of said Estate as aforesaid shall after paying Taxes assessments insurance &c and my said daughter in law her said annuity, be equally divided *among all my grand children,* The shares of those under age going into the hands of their respective guardians or trustees and *the shares of such as may be then dead going to their descendants if any, or if any be dead at the date of such divission of income without leaving lawful issue, the same shall go to the surviving brothers and the sisters,* which disposition of said net profits shall continue untill the time fixed for final distribution herein. No beneficiary under this Will, shall sell Mortgage or pledge *or by any means anticipate his or her share of said income or of the principal of said estate, until after the general divission thereof,* Nor shall the same be subjected by legal process to the payment of his or her debts and if either shall sell mortgage, pledge or anticipate his or her income or principal or attempt to do so, or if any court of final resort shall adjudge either such income or principal of said Estate liable for the payment of his or her debts, prior to said divission, the interest of such ones shall become forfeited and cease and the share of such thenceforth shall pass and belong to the legatees under this Will who shall not have incured such forfeiture

and the parts there of going to the Females shall be for their sole and separate use and free from the debts and control of any of their husbands * * *."

All the parties are agreed on the principle that the will must be construed according to the testator's intent, gathered from what he did say in the instrument as distinguished from what the court thinks he would have said if he had considered the problem now before it. And though they are not further utilized in this opinion, we give full recognition as well to the familiar rules of construction favoring testacy over intestacy, absolute over qualified estates, and early vesting as against contingent rights. All of these, however, apply only where there is real doubt as to what the testator intended by what he said. They cannot be hoist by their own petard to achieve a result repugnant to the testator's legitimate objectives as the court is able to recognize those objectives from a reading of the instrument itself.

The chancellor has given the parties and this court the benefit of an extremely able written opinion in which he concluded that no one has a vested interest in the corpus until the end of 21 years after the death of the last grandchild. In the meantime no vested interest could amount to more than a life estate. He held "that by necessary implication, there is disclosed from the whole content of testator's will an intention that, should one line of his grandchildren die out, the corpus of the trust he created should devolve * * * to the other line of his grandchildren," and that under the doctrine of implied cross-remainders the income accruing during the life of the trust also goes to the other line, the descendants of Graham Wilder. We reach the same result, but on the express wording of the will without resort to implications.

Paragraph 6 of the will directs an ultimate distribution of the whole corpus "among the descendants of said grand-

children." This is an express statement of the testator's primary purpose. His further direction that if any should die without issue his share should go to his brothers or sisters or their descendants states a subsidiary purpose, a refinement, which does not oust or supplant the primary command but, on the contrary, complements and is consistent with it. It is a specific implementation of the general but nevertheless primary direction. As to the Hasts, the subsidiary purpose ended upon their eventual demise without progeny, but all of the conditions necessary to consummation of the primary purpose still subsist, and the express provision for an ultimate division among the descendants of the grandchildren remains applicable.

With respect to the income during the life of the trust, which is governed by paragraph 7 of the will, the testator unequivocally ordered a division "among all my grandchildren," or their descendants, after which he proceeded to direct the manner in which this purpose should be carried out in event of a beneficiary's death without issue. And again we must observe that this specific direction does not evince any disposition on the part of the testator to override or render inoperative his main purpose, which was to provide for his grandchildren and their descendants. Though circumstances made the specific direction inapplicable to the death of Lisette Hast, the general direction continued to apply, and it controls. (It may occur to the reader at this point that there is an old bromide in the law to the effect that the specific limits the general, and that perhaps we have applied it backwards. That rule, however, if appropriate in a will construction case, would be subordinate to the principle that the intention of the testator is to be gathered from the will as a whole.)

The administrator d. b. n. with the will annexed of the Lisette Hast estate insists that the equitable title taken by each of the nine grandchildren was a defeasible fee, in which the condition of divestment was his or her death (a) with issue or (b)

without issue but with surviving brothers or sisters. Hence Lisette's death without issue and without surviving brothers or sisters perfected her interest as an indefeasible fee, which she had the right to transmit by will. It is further argued that according to the "accrued share" rule, Restatement of the Law of Property, Future Interests, § 271, the shares of Louis, Emma and Etta Hast were free of the Wilder will after passing from the original takers. (For purposes of this opinion we accept the proposition that equitable estates are determined and governed by the same rules as are legal estates. See Simes and Smith, Future Interests, § 166, p. 207.)

It seems to us that this would be a most awkward and unnatural construction of the will. If the testator had a design that is utterly unmistakable, it was to tie up the bulk of his estate and secure it to the use of his lineal descendants as long as the law would allow. This was the framework within which the specific or subsidiary provisions, as we have termed them, were set, and from which they cannot fairly be isolated and considered alone. Regard, for example, the charge in paragraph 7 that no beneficiary "by any means anticipate his or her share of said income or of the principal of said estate, until after the general division [sic] thereof. * * *" That the testator, in designating the cestuis, did not use "for life" or similar words, and spoke of "the share of said grandchild" (par. 6) and "his or her share" (par. 7) with reference to a future time when the share must necessarily have passed to someone else, does not obscure his plain intention that until the final day of reckoning, 21 years after the death of Ethel Wilder Bailey, none of the beneficiaries shall have an interest beyond his or her lifetime. All of the ultimate remainder interests are contingent. Cf. 33 Am.Jur. 535 (Life Estates, Remainders, and Reversions, § 75); Curtis v. Citizens Bank & Trust Co. of Lexington, Ky., Ky.1958, 318 S.W.2d 33. In our opinion that is precisely what the testator meant by what he said, hence we find ourselves en-

tirely in accord with the chancellor's conclusion that "to hold otherwise would be to frustrate the intention of the testator."

There are a number of cases in which this court has held that if property is devised in remainder with a provision that if a remainderman should die without issue his portion shall go to others, the remainderman takes a vested fee subject to defeasance in event of his death without issue before expiration of the particular estate or estates. See, for example, Roach v. Dance, 1904, 26 Ky.Law Rep. 157, 80 S.W. 1097; Cooper's Adm'r v. Clarke, 1921, 192 Ky. 404, 240 S.W. 361; Edmunds v. Bronaugh, 1925, 208 Ky. 226, 270 S.W. 828; and Carroll v. Carroll's Ex'r, 1933, 248 Ky. 386, 58 S.W.2d 670. Each of those cases, however, involved the interest of a remainderman or, at least, a devisee who was designated as the ultimate taker following a temporary postponement of possession. The question was whether the remainder interest was vested or contingent. In the case now before us it was not intended, and was in fact impossible from the beginning, that any of the grandchildren ever be an ultimate taker. On the contrary, they were the first takers, the holders of intervening particular estates, and not remaindermen. Since they could never have any interest in the ultimate remainder, they did not have a fee of any kind. Their interests were vested, of course, but they were life interests only.

Every will case, as every divorce case, stands peculiarly on its own facts. We do not believe that an exhaustive analysis by further comparison of this case with other cases cited to us in the briefs would serve a useful purpose. What this will means is just a matter of judgment, and we think it is sufficiently clear on its face to negate the relevance of any technical rule of construction except the pole star rule. Cf. Carroll v. Carroll's Ex'r, 1933, 248 Ky. 386, 58 S.W.2d 670, 672; Skiles v. Bowling Green Trust Co., 1943, 294 Ky. 211, 171 S.W. 235, 239.

The judgment is affirmed.