**J. Stewart HARRISON et al., Appellants,**

**v.**

**Herbert SHIPPEN et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 13, 1967.

J. Kennedy Helm, Jr., Stites, Peabody & Helm, Marshall P. Elderd, Brown & Elderd, Blakey Helm, Helm, Eddleman, Jay & Eubanks, Louisville, for appellants.

Rucker Todd, John T. Bondurant, Brown, Ardery, Todd & Dudley, E. Preston Young, L. D. Deters, Samuel R. Wells, Marshall, Cochran, Heyburn & Wells, Patrick S. Greene, Louisville, for appellees.

JAMES C. CARTER, Jr., Special Commissioner.

This declaratory judgment action was filed by Citizens Fidelity Bank and Trust Company, successor trustee under the will of Alice Stokes Harrison, deceased, seeking construction of that will. From a judgment of the Jefferson Circuit Court construing the will, this appeal was taken.

Alice Stokes Harrison executed her will in Louisville, Kentucky, on February 19, 1881, and executed a codicil on August 3, 1881. She died on September 19, 1881, a resident of Louisville. Thereafter her will and codicil were admitted to probate by the Jefferson County Court.

The portion of the will relevant in determining the question presented reads as follows:

"1st I give all the property of which I may be possessed or to which I may be entitled at the time of my death, wherever the same may be situated, and all money in my possession or due to me, unto J. W. E. Bayly and his successors in office in

trust, for the equal benefit of my two daughters, Emma S. and Rosa Locke Harrison, for and during their lives, with remainder at the death of each to her descendants, if any, in fee simple.

"2nd Should either of my said daughters die without leaving issue, then her share of my estate shall go to the surviving sister or her issue, and should both die without issue, then the whole of my estate except my jewels and personal ornaments shall go in fee simple to my husband, John S. Harrison, if living, and if not, it shall revert to my heirs.

"3rd In the event of the death of both of my children without leaving issue, my jewels and personal ornaments shall be sold by the trustee and the proceeds devoted to the purchase of a monument for the graves of my said children. In the event of the marriage of either of my daughters her share of my estate shall be held for her sole and separate use, free from the control of her husband; the income thereof shall be paid to her in person or to her own order, and she shall in no wise sell or encumber the same or anticipate the income.

"4th The Trustee shall support and educate my children during their minority, and if the income of my estate shall not be sufficient for that purpose, he may use such portion of the principal as he may deem proper, but no encroachment shall be made upon the principal after my daughters come of age or marry."

When Alice Harrison died, she was survived by her husband, John S. Harrison, and by two children, Emma S. Harrison and Rosa Locke Harrison. She was also survived by a sister, Ellen S. Shippen, and by nieces and nephews who were descendants of two other sisters and a brother, all of whom had predeceased Alice Harrison. Subsequent to the death of Alice Harrison her husband remarried. Three children were born to this marriage.

John S. Harrison, the surviving husband of Alice Harrison, died in 1901. Emma S. Harrison, one of Alice Harrison's two children, married William Edmunds who died in 1912. Emma Harrison Edmunds never remarried and died without issue surviving her on July 28, 1953, a resident of Jefferson County, Kentucky.

Rosa Locke Harrison, the other daughter of Alice Harrison, never married and died testate without issue surviving her on January 19, 1964, a resident of LaJolla, California.

Under the terms of the will of Alice Harrison, upon the death of both Emma and Rosa without issue, John S. Harrison having predeceased them, the entire estate (except jewels and personal ornaments) is to "revert to my (Alice Harrison's) heirs."

The principal question in this case is whether the "heirs" of Alice Harrison, to whom her estate is to "revert," are to be ascertained as of the date of her death in September 1881, or as of the date of death of Rosa Locke Harrison, last surviving life tenant, on January 19, 1964.

A stipulation of facts and various motions for summary judgment were filed. The chancellor granted judgment in favor of the appellees, and this appeal followed.

The appellants, who are the descendants of John Harrison and his second wife and the residuary beneficiaries under the will of Rosa L. Harrison and none of whom has any blood relationship to Alice Harrison, contend that the heirs of Alice Harrison are those who stood in that relation as of the date of her death, September 19, 1881. If they are correct, the heirs were

Rosa and Emma, Alice Harrison's two daughters.

The appellees, who are the descendants of the brothers and sisters of Alice Harrison, contend that the heirs of Alice Harrison should be determined as of the date of death of Rosa L. Harrison, January 19, 1964. If they are correct, the heirs are the descendants of Alice Harrison's brothers and sisters.

The chancellor found that Alice Harrison intended that if her husband should predecease her daughters and if her two daughters should die without issue, then the estate should pass to her brothers and sisters and their descendants. In order to give effect to the intention of the testatrix, the chancellor concluded that the heirs must be determined as of the date of death of Rosa Locke Harrison on January 19, 1964.

 In deciding this case, we begin with the basic principle set out by this court in Penick v. Lewis, 194 Ky. 231, 238 S.W. 745, 747, (1922):

"It is trite to say that the universally established principle for the construction of a will is to ascertain the intention of the testator, and to give effect to that intention, unless it is contrary to the established law, or an accepted public policy."

 The appellants contend the chancellor erred in considering circumstantial evidence. This court has consistently held that improper wording of a will that leaves a doubt as to the intention of the testator justifies the introduction of circumstantial evidence to clarify the meaning of the words used. Hoge v. Street, 310 Ky. 370, 220 S.W.2d 830 (1949); Johnson v. Foley, 302 Ky. 848, 196 S.W.2d 733 (1946); Commonwealth v. Manuel, 183 Ky. 48, 208 S.W. 327 (1919).

This court said in Eichhorn v. Morat, 175 Ky. 80, 193 S.W. 1013, 1015 (1917), that:

"The cardinal rule which should always guide the courts in their investigations of controversies is to ascertain the facts and apply the law applicable thereto. The modern tendency is toward relaxing the ancient, strict technical rules with their hampering effects, and to lift the curtains of the courthouse so as to let in the light of truth as much so as is consonant with the prevention of fraud and its evil consequences. No rule should be inflexibly adhered to which has for its purpose a frowning influence upon such an enlightening departure * * * *."

Thus, in attempting to ascertain what Alice Harrison meant by the term "heirs," the chancellor properly considered circumstantial evidence relating to Alice's family and the nature of her property.

 The will reveals that Alice Harrison was primarily concerned with the welfare of her two daughters. She made sure that if either daughter married, the husband would in no way control the income or corpus. Realizing that her daughters might have children, the testatrix provided for her grandchildren to have the trust corpus. Still controlling her estate, she channeled it into the hands of her husband only if her daughters died without issue and her husband outlived the daughters. It is unlikely the testatrix intended to control her estate up to this point and then turn it over to her daughters to pass on to strangers should they die without issue. In this regard she provided in the will that a daughter "shall in no wise sell or encumber (her share of the estate) or anticipate the income."

It seems reasonable that when Alice Harrison was faced with the possibility that after her husband's death her daughters might die without issue she thought: Who should be next in line to receive this property but her brothers and sisters and descendants? To Alice Harrison writing her will in 1881, these were surely the "heirs" to whom she wanted her estate to revert.

The chancellor properly concluded that in the circumstances of this case the testatrix intended her estate to pass to her brothers and sisters and their descendants.

The appellants, however, contend that the time of ascertainment of the heirs of Alice Harrison should be determined by the application of a rule of construction that a testator's heirs are to be determined as of the date of the testator's death. Pewitt v. Workman, 289 Ky. 459, 159 S.W. 2d 21 (1942); Weil v. King, 31 Ky. Law Rep. 1010, 104 S.W. 380 (1907). But on numerous occasions this court has said that it will not be bound by this technical rule of construction when the intent of the testator would be frustrated.

Mitchell v. Dauphin Deposit Trust Co., 283 Ky. 532, 142 S.W.2d 181 (1940), involved the issue of whether the dispositive clause "my heirs at law as the same would descend from me" had reference to a class to be determined as of the date of the testator's death or as of the date of death of the testator's daughter. This court refused to be bound by any rule that a testator's heirs must be ascertained as of the testator's death; rather we concluded that the heirs should be determined at the date of the daughter's death. In arriving at this conclusion we relied on the intent of the testator, reasoning:

"It would seem rather illogical to construe the will to mean that the testator intended to give his daugther the estate in fee if she survived him and then if the daughter died leaving no issue surviving her to divest her of it in order to give it back to her in fee under the designation of 'heirs at law.'" (Mitchell v. Dauphin Deposit Trust Co., supra, at p. 186)

In Clark v. Payne, 288 Ky. 819, 157 S.W.2d 63 (1941), the testator had given certain land and slaves to his granddaughter for life, and if she left no surviving issue, the land and slaves were to "return to my estate." After holding that the words "my estate" referred to heirs of the testator,

the court turned to the question of when the heirs were to be determined. Once again we made it clear that we will not be shackled by any rule that a testator's heirs must be determined as of the testator's death. Holding that the heirs were to be ascertained at the death of the granddaughter, we said on page 67:

"Declining the guidance of precedents tainted with outworn concepts, we encounter no difficulty in giving effect to what it seems to us was the obvious intention of the testator, namely, to make certain, by use of the language employed, that no part of his estate * * * should pass to strangers to his blood."

Finally, we turn to Copeland v. State Bank & Trust Co., 300 Ky. 432, 188 S.W.2d 1017 (1945). The will there provided that if the testator's daughter died without leaving children her share of a trust "shall revert to my estate and be distributed by my trustee among my heirs at law * * *." There, as here, it was contended that the court should be controlled by a rule of construction that the heirs were to be determined as of the testator's death. We refused, however, to employ any "artificial rules of construction" when we said:

"Many authorities are cited in support of each contention, but we find it unnecessary to review them, since we are committed to the rule that the intention of the testator, as manifested by the language of the will as a whole, must control, regardless of rules of construction such as those referred to."

The reasoning found in these three cases is controlling in the construction of Alice Harrison's will. The chancellor has correctly determined the intent of the testatrix. Her intent should not be frustrated by the blind application of any rule of construction.

In their brief appellants have conceded that the time for ascertaining Alice Harrison's heirs who take the Texas real estate is the same as ascertaining the heirs who

would take the Kentucky personalty and that the Texas real estate will pass to the same persons as the trust corpus in Kentucky. We have so held, and accordingly no issue is presented to us for decision with respect to the Texas real estate.

We are of the opinion that the chancellor correctly determined that Alice Harrison's will, properly construed in the light of attending circumstances, gives the remainder of Alice's estate to her heirs determined as of the time of the death of Rosa, the survivor of Alice's two daughters.

The judgment is affirmed.

All concur.