ESTATE OF CLARENCE A. WILLIAMS, DECEASED, WILLIAM E. NODINE, ADMINISTRATOR, D.B.N. C.T.A., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6194–72. Filed June 25, 1974.

*Edward S. Wunsch*, for the petitioner.
*James C. Lynch*, for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in Federal estate tax for the Estate of Clarence A. Williams in the amount of $115,821.54. The issues before the Court are whether, at the time of his death, Clarence A. Williams had a vested interest in either (1) a portion of the corpus of a testamentary trust established by his uncle or (2) the income from a portion of the corpus of the trust, which is includable in his gross estate under section 2033, I.R.C. 1954.

FINDINGS OF FACT

The facts have been fully stipulated by the parties and are found accordingly.

Petitioner is the Estate of Clarence A. Williams, deceased, William E. Nodine, administrator d.b.n. with the will attached, who at the time the petition was filed had his legal address in Clearwater, Fla. Clarence A. Williams died April 29, 1968, a resident of Clearwater, Fla. The estate tax return for the Estate of Clarence A. Williams was received by the director of internal revenue, Jacksonville, Fla., on February 25, 1969.

Up to the time of his death, Clarence A. Williams received a portion of the income from a trust established under the will of Joseph L. Friedman, the decedent's uncle.

Joseph L. Friedman died a resident of Paducah, Ky., in 1913. His last will and testament, dated June 25, 1908, was duly admitted to probate on July 9, 1913,[1] by the County Court for McCracken County, Ky. The will of Friedman created a testamentary trust. The portion of Friedman's will that established the trust provided:

Now after the foregoing devises and bequests are provided for and executed, it is my will that the balance of my estate be converted into good, interest-bearing securities which shall be turned over by my executors to the Louisville

---

[1] The parties stipulated that Joseph L. Friedman died on July 15, 1913. They also stipulated that his will was duly admitted to probate on July 9, 1913, and this date of probate is also shown on a true copy of the will. There is no explanation for this apparent inconsistency.

Trust Company of Louisville, Kentucky, as trustee, if in the opinion of my executors that Company is in a position to handle the balance of my estate; but be it understood that it is my will that my executors shall exercise their discretion as to the selection of a trustee, preferring, however, the Louisville Trust Company if it shall continue to be a solvent and reputable concern in their judgment. Such securities shall be held by such trustee and in trust for the benefit of my mother, Mrs. Louisa Friedman, and my sisters, Mrs. Ida Williams, Mrs. Blanche C. Keiler and Mrs. Sunshine F. Nahm and their children and [sic] hereinafter provided. The trustee will keep the trust fund invested in the best and safest securities to be found at the best interest rates to be secured, having at all times due regard to the safety of the investments, and will pay to my mother and my three sisters, or to the heirs of such of my sisters as may die, equally the income from said trust fund. When my mother dies her interest in said income is to go to her daughters or their children, if any of them be dead. And the interest of each of my sisters in the income from said estate in the hands of such trustee upon her death shall go to her children. It being my purpose to create an estate in the hands of the trustee to be selected as hereinabove set forth, the income from which shall go to my mother and my three sisters as long as my mother lives and at her death to my three sisters as long as they live and in the event of the death of either one of them her interest shall go to her children.

It is my will that the funds in the hands of the trustee provided for herein shall be held by such trustee and the income therefrom paid as hereinbefore directed until the death of the last to survive of my three sisters hereinbefore named; and for twenty-one years thereafter; and at the expiration of the period of twenty-one years after the death of the last to survive of my said three sisters then the estate in the hands of said trustee shall be divided, one-third to the heirs of each of my said sisters.

Friedman was survived by his mother, Louisa Friedman, and his three sisters who were named in the will, Ida Williams, Blanche C. Keiler, and Sunshine F. Nahm. Ida Williams was born in 1862, Blanche Keiler in 1866, and Sunshine Nahm in 1869. At the time Friedman's will was executed on June 25, 1908, and at the time of his death in 1913, his sisters had living children as follows:

(a) Ida was the mother of:
    (1) Clarence A. Williams, born in 1879, and
    (2) Jerome J. Williams, born in 1886;
(b) Blanche was the mother of:
    (1) Leo F. Keiler, born in 1888, and
    (2) Anita Keiler (May), born in 1893, and
(c) Sunshine was the mother of:
    (1) Emanie Nahm (Phillips), born in 1895.

Louisa Friedman died on February 2, 1922. Ida Williams died on December 15, 1914. Ida was survived by her two children, Jerome J. Williams and Clarence A. Williams. Jerome was still living on the date this case was submitted. Clarence, the decedent in the present case, died on April 29, 1968, leaving surviving him his wife, Claribel,

and his daughter, Anita Cote. Claribel Williams was the second wife of the decedent and never bore any children by him. Claribel died December 2, 1971.

Sunshine Nahm died in 1937, leaving her daughter Emanie Nahm Phillips surviving, who was also living at the date this case was submitted. The third sister of Friedman, Blanche C. Keiler, died on March 9, 1954, being the last sister to die. Blanche was survived by two children, Anita Keiler May and Leo F. Keiler. Leo F. Keiler died in 1958, leaving two children surviving him, Blanche Keiler Prinzmetal and John W. Keiler II. Anita K. May was alive when this case was submitted.

The following genealogical chart (p. 404) shows the relationship of the above-mentioned people to Joseph L. Friedman, their date of birth, and their date of death, if applicable.

On June 6, 1958, John W. Keiler II was appointed as trustee of the last will and testament of Joseph L. Friedman. On July 28, 1965, he resigned as trustee of the one-third of the assets that were then being held for the benefit of Sunshine Nahm, her children, and heirs. Citizens Fidelity Bank & Trust Co. of Louisville, Ky., was appointed successor trustee of that one-third portion of the original trust estate. That one-third portion that benefited Sunshine Nahm, her children, and heirs was thereafter and is presently known as the Joseph L. Friedman Trust A. The remaining two-thirds portion of the original trust estate, which was held for the benefit of Ida Williams and Blanche Keiler and their heirs, was subsequently designated the Joseph L. Friedman Trust B. Trust B is the trust with which we are presently concerned. The above division of the trust estate was made pursuant to an order entered by the McCracken County Court in the State of Kentucky. The order provided, in pertinent part:

C. Joseph L. Friedman Trust A shall constitute the portion of the original trust estate in which all persons claiming and taking through the deceased sister of the said Joseph L. Friedman, Sunshine F. Nahm, are interested, that is to say, the "heirs" of the said Sunshine F. Nahm, and said persons shall not have any claim to or interest in Joseph L. Friedman Trust B whatsoever, unless they should happen to qualify as "heirs" of the other two deceased sisters by reason of the death of the direct descendants of said sisters.

D. Joseph L. Friedman Trust B shall constitute the portion of the original trust estate in which all persons claiming and taking through the deceased sisters of the said Joseph L. Friedman, Ida F. Williams and Blanche F. Keiler, are interested, that is to say, the "heirs" of the said, Ida F. Williams and Blanche F. Keiler, and said persons shall not have any claim to or interest in Joseph L. Friedman Trust A whatsoever, unless they should happen to qualify as "heirs" of the other deceased sister by reason of the death of the direct descendants of said sister.

\* \* \* \* \* \* \*

LOUISA FRIEDMAN
(Born ? — Died Feb. 2, 1922)

Joseph L. Friedman
(c. 1860–July 15, 1913)

Ida Williams
(1862–Dec. 15, 1914)

Blanche Keiler
(1866–Mar. 9, 1954)

Sunshine Nahm
(1869–1937)

Clarence A. Williams
(1879–Apr. 29, 1968)

Jerome J. Williams
(1886–    )

Leo F. Keiler
(1888–1958)

Anita Keiler (May)
(1893–    )

Emanie Nahm (Phillips)
(1895–    )

Anita Cote
(1905–    )

Blanche Keiler (Prinzmetal)
(  ?  –    )

John W. Keiler II
(  ?  –    )

L. An attested copy of this order shall be sent by the Clerk of this Court to all adult contingent beneficiaries who are not now represented by counsel herein, and to the persons having custody of all infant contingent beneficiaries, and said Clerk may rely upon information furnished to him in that respect concerning names, addresses et cetera.

Following the death of Joseph L. Friedman in 1913, the persons acting as fiduciaries under the will of Joseph L. Friedman paid the net income from the trust estate to the following individuals: One-fourth to his mother, Louisa Friedman; one-fourth to his sister, Ida Williams; one-fourth to his sister, Blanche Keiler; and one-fourth to his sister, Sunshine Nahm. After the death of Ida Williams on December 15, 1914, her portion of the net income from the trust estate was divided equally and her two children, Clarence A. Williams and Jerome J. Williams, each began receiving one-eighth of the trust income. The other sisters of Friedman and his mother continued to receive their one-fourth shares.

When Louisa Friedman died in 1922, the fractional shares of the net trust income were recomputed and paid to the following recipients: One-third to Blanche C. Keiler; one-third to Sunshine Nahm; one-sixth to Jerome J. Williams; and one-sixth to Clarence A. Williams.

Sunshine F. Nahm died in 1937 and was survived by one child, Emanie A. Nahm (Phillips). Sunshine's one-third of the trust income was thereafter paid to Emanie. The other income beneficiaries continued receiving their proportionate share of the income.

When the last surviving sister of Joseph L. Friedman, Blanche C. Keiler, died on March 9, 1954, the net income from the trust was paid in the following manner: One-third to Emanie Nahm (Phillips); one-sixth to Anita Keiler (May) (daughter of Blanche); one-sixth to Leo F. Keiler (son of Blanche); one-sixth to Jerome J. Williams; and one-sixth to Clarence A. Williams.

On June 28, 1958, Leo F. Keiler died. He was survived by two children, Blanche Keiler Prinzmetal and John W. Keiler II. These children of Leo each began receiving one-twelfth (one-half of Leo's one-sixth) of the net trust income. The other recipients of trust income continued to receive their previous fractional shares.

Since the division of the trust estate in 1965, the Joseph L. Friedman Trust B was held by John W. Keiler II, as trustee. The net income from Trust B was paid to the following people in the following proportions: One-fourth to Clarence A. Williams; one-fourth to Jerome J. Williams; one-fourth to Anita Keiler May; one-eighth to Blanche Keiler Prinzmetal; and one-eighth to John W. Keiler II. Clarence A. Williams, the decedent in the present case, died on April 29, 1968, and since the time of his death, his one-fourth share of the net income from

Trust B has been paid to his daughter, Anita Cote. The other recipients have continued receiving their fractional share of the income from Trust B.

In his will, executed April 29, 1960, and admitted to probate on or about May 9, 1968, after making specific bequests of $1,000 to each of his granddaughter and grandson, Clarence A. Williams left all the rest and remainder of his estate to his wife, Claribel. Paragraph IV of the will stated:

I am making no provision in this Will for my daughter, MRS. ANITA CLIETT, not because of any lack of affection for her, but because of the fact that she is otherwise well provided for by virtue of trusts which have been previously established and which will pass to her outside of this Will at the time of my death.

Mrs. Anita Cliett is the same person as Anita Cote, and she had no interest in any trust other than the trust established under the will of Joseph L. Friedman. The total gross estate reported on the estate tax return for the Estate of Clarence A. Williams was valued at $149,910.25. Petitioner maintains that Clarence A. Williams had no interest in the Joseph L. Friedman Trust that was taxable in his estate and no value therefor was reported in his gross estate.

Respondent, in his notice of deficiency, determined that decedent did have a one-fourth interest in the Joseph L. Friedman Trust B, which was taxable in decedent's estate, which he valued at $789,677.95. The marital deduction was increased accordingly.

The total fair market value of all of the assets of the Joseph L. Friedman Trust B as of April 29, 1968, was $3,158,711.83.

OPINION

Clarence A. Williams, the decedent herein, died testate April 29, 1968. During his lifetime decedent received a part of the income from a trust established under the will of his uncle, Joseph L. Friedman, who died a resident of Kentucky in 1913. Under the terms thereof, the trust was to terminate 21 years after the death of the last survivor of Friedman's three sisters, one of whom was decedent's mother, which will be in 1975. In his will decedent made reference to the trust but made no disposition of any interest that he might have therein. In the estate tax return filed for his estate disclosure was made of decedent's income interest in the trust, but no value therefor was included in his gross estate. The issues before us are whether decedent had such an interest in either the corpus or the income of the trust that it would be taxable in his estate.

The relevant provision in the Internal Revenue Code is section 2033, which provides: "The value of the gross estate shall include the value of all property to the extent of the interest therein of the

decedent at the time of his death." Section 20.2033–1, Estate Tax Regs., adds little to the statement of law quoted above, although earlier regulations contained the statement quoted in the footnote.[2]

The Federal taxing statute enacted by Congress determines whether property in which a decedent had an interest at the time of his death is subject to the Federal estate tax; but when the question becomes whether the decedent had such an interest that is declared taxable under Federal law, we must look to State law to answer that question. *Blair* v. *Commissioner*, 300 U.S. 5 (1937). As was said in *Morgan* v. *Commissioner*, 309 U.S. 78 (1940), quoted with approval in *Aquilino* v. *United States*, 363 U.S. 509, 513 (1960), "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute. [Fn. omitted.]"

The Federal statute here involved is inclusive but not definitive, including in the gross estate "all property to the extent of the interest therein of the decedent." It has been held, particularly with regard to interests in trusts, that the potential inclusion of such an interest in a decedent's taxable estate is often dependent on whether decedent's interest was vested or contingent. If the former, it is taxable; if the latter, it is not taxable. *Earle* v. *Commissioner*, 157 F. 2d 501 (C.A. 6, 1946); *Estate of Sergeant Price Martin*, 23 T.C. 725 (1955); *Estate of John G. Frazer*, 6 T.C. 1255 (1946), affd. 162 F. 2d 167 (C.A. 3, 1947); *Joseph P. McMullen, Executor*, 3 B.T.A. 589 (1926). However, where a decedent's right to receive benefits under a trust is so conditioned as to terminate at his death, such interest is not taxable, see Rev. Rul. 67–370, 1967–2 C.B. 324, whether such life estate is considered vested or not. The parties are in agreement that the resolution of the issues in this case hinges on whether decedent had a vested or contingent interest in the Friedman trust.

The parties have stipulated that the interpretation of the will of Joseph L. Friedman is controlled by the law of Kentucky, the State of which Friedman was a resident at the time of his death and wherein his estate was administered. In *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967), the Supreme Court said that a State's highest court is the best authority on its own law. Where Federal estate tax liability turns upon the character of a property interest held and transferred by a decedent under State law, the Federal authorities are not bound by the determination made of such property interest by a State trial

---

[2] Art. 13, Regs. 80 (1937), contained the following statement:

"The value of a vested remainder should be included in gross estate. Nothing should be included, however, on account of a contingent remainder in the case the contingency does not happen in the lifetime of the decedent, and the interest consequently lapses at his death. Nor should anything be included on account of an interest or an estate limited for the life of the decedent. * * *"

court; if there is no decision by the State's highest court, Federal authorities must apply what they find to be the State law after giving "proper regard" to relevant rulings of other courts of the State.

The Kentucky law with regard to the interpretation of wills and determination of property rights created thereby is rather succinctly set forth in *Lincoln Bank & Trust Co.* v. *Bailey*, 351 S. W. 2d 163, 165 (Ky. Ct. App. 1961), as follows:

> All the parties are agreed on the principle that the will must be construed according to the testator's intent, gathered from what he did say in the instrument as distinguished from what the court thinks he would have said if he had considered the problem now before it. And though they are not further utilized in this opinion, we give full recognition as well to the familiar rules of construction favoring testacy over intestacy, absolute over qualified estates, and early vesting as against contingent rights. All of these, however, apply only where there is real doubt as to what the testator intended by what he said. They cannot be hoist by their own petard to achieve a result repugnant to the testator's legitimate objectives as the court is able to recognize those objectives from a reading of the instrument itself.

And, in *Harrison* v. *Shippen*, 419 S.W. 2d 557 (Ky. Ct. App. 1967), the highest court of Kentucky made it clear that it is committed to the rule that the intention of the testator, as manifested by the will as a whole, must control, and that it will not be bound by technical rules of construction when the intent of the testator would be frustrated thereby.

We think we can determine with reasonable certainty the intent of Joseph L. Friedman with respect to the disposition of his estate from the terms of his will and that it is not necessary to turn to the rules of construction relied on by respondent. As a result of that determination, we conclude that Clarence A. Williams, decedent herein, did not have such an interest in either the corpus or the income of the Friedman trust at the time of his death that would require inclusion of the value thereof in his estate for Federal estate tax purposes.

We turn first to the provisions of the Friedman will relative to the corpus of the trust. After making various specific bequests, the will provided:

> Now after the foregoing devises and bequests are provided for and executed, it is my will that the balance of my estate be converted into good * * * securities which shall be turned over by my executors to the Louisville Trust Company * * * as trustee * * *. Such securities shall be held by such trustee and in trust for the benefit of my mother * * * and my sisters * * * and their children and [sic] hereinafter provided. * * *

After providing for distribution of the income, the will continued:

> It is my will that the funds in the hands of the trustee * * * shall be held by such trustee * * * until the death of the last to survive of my three sisters * * * and for twenty-one years thereafter; and at the expiration of the period of twenty-one years after the death of the last to survive of my said three sisters

then the estate in the hands of said trustee shall be divided, one-third to the heirs of each of my said sisters.

It is quite clear from the above language that the testator was not only conscious of the rule against perpetuities but also that he intended that the corpus of the estate be continued in trust for as long as it could reasonably be kept in trust without violating the rule. "*Then* the estate * * * shall be divided, one-third to the heirs of each of my said sisters." (Emphasis added.) The language itself not only postpones the termination of the trust and division of the trust estate until the end of the 21-year period, but also postpones the determination of the "heirs" of the sisters, who were to be the ultimate beneficiaries, until the 21 years expired. Furthermore, it would be rather foolish to have the heirs—remainder beneficiaries—determined as of the date of death of each sister, as contended by respondent, and then postpone distribution to them for a minimum of 21 years thereafter. At the end of the 21-years-or-longer period all or many of the heirs as so determined might be deceased—and yet no provision was made for disposition of their interests in that event. Also, had testator intended that the heirs of his sisters be determined as of the date of their respective deaths, he would probably have either said so or used the words "children" instead of "heirs."

The rule against perpetuities has long been in force in Kentucky both in the courts, see *Johnson's Trustee* v. *Johnson*, 25 Ky. L. Rptr. 2119, 79 S. W. 293 (1904); *Fidelity Trust Co.* v. *Lloyd*, 25 Ky. L. Rptr. 1827, 78 S. W. 896 (1904); and by statute, see Ky. Stat. 1903, sec. 2360, and Ky. Rev. Stat. Ann. sec. 381.215 (Baldwin 1973). The latter statute provides:

No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest. It is the purpose of this section to enact the common law rule against perpetuities * * *.

The rule against perpetuities primarily prevents the postponement of *vesting* of interests in property beyond the prescribed period. The fact that Friedman chose the exact period prescribed by the rule against perpetuities for continuation of the trust is a strong indication that he intended that no interest in the corpus of the trust, at least, vest until the trust terminated.

It is usually a waste of time to attempt to analogize one will interpretation case with another because the words used and the circumstances existing are rarely the same and the goal sought in the instant case is the intent of the instant testator, not another, but it may be helpful to point out that in several cases the highest court of Kentucky has given consideration to some of the factors we have considered in reaching conclusions similar to our conclusion here. One such case is *Lincoln*

*Bank & Trust Co.* v. *Bailey, supra,* which we have quoted from above. In that case the will under consideration provided that the estate be put in trust and held together as a whole "until twenty one years after the death of my said grand children, who may be alive at my death and the last survivor of them, when it shall be divided *among the descendants of said grand children.*" The court held that all of the ultimate remainder interests were contingent. *Harrison* v. *Shippen, supra,* involved a will containing a design for devolution of the estate somewhat similar to the testator's design in this case and the court concluded that the ultimate remaindermen were to be determined as of the date of termination of the trust. Its reasoning included the following: "It is unlikely the testatrix intended to control her estate up to this point and then turn it over to her daughters to pass on to strangers should they die without issue." We think Friedman's intent to keep his estate within his sisters' bloodlines is also apparent from his overall plan for disposition of his estate as enunciated in his will. But if our decedent had a vested interest in the trust estate at the time of his death which was a part of his estate, Ida Williams' one-third share of the trust would pass to decedent's wife, Claribel, and eventually to her heirs, all of whom would be complete strangers to Ida's bloodlines, and to the exclusion of Ida's granddaughter, Anita.

We have no reasonable doubt based on our analysis of Friedman's will that he intended the determination of the ultimate beneficiaries of the trust estate to be made as of the date of termination of the trust. Consequently, decedent Williams had only a contingent interest in the trust corpus at the time of his death and that interest is not taxable in his estate.

While we have given little or no consideration to the following factors in reaching our conclusion, they do tend to support our conclusion. In the proceedings in the McCracken County Court in Kentucky to divide the trust estate in 1965, which does not have the earmarks of a completely friendly proceeding, that court decreed that the Joseph L. Friedman Trust B "shall constitute the portion of the original trust estate in which all persons claiming and taking through the deceased sisters of the said Joseph L. Friedman, Ida F. Williams and Blanche F. Keiler, are interested, that is to say, the 'heirs' of the said Ida F. Williams * * * and said persons shall not have any claim to or interest in Joseph L. Friedman Trust A whatsoever, unless they should happen to qualify as 'heirs' of the other deceased sister by reason of the death of the direct descendants of said sister." This certainly implies an interpretation of the Friedman will that would postpone determination of the "heirs" of a deceased sister until termination of the trust. We have given "proper regard" to it.

It is also obvious that decedent herein, Clarence A. Williams, thought he had no disposable interest in the trust. In his will he stated that he was making no provision for his daughter, Anita, not because of lack of affection for her, "but because of the fact that she is otherwise well provided for by virtue of trusts which have been previously established and which will pass to her outside of this Will at the time of my death." The only trust in which Anita had any interest was the Friedman Trust B. Furthermore, we note that since the death of Clarence his share of the income from the trust has been distributed to Anita.

This leaves only the question whether decedent had such an interest in the income from the trust at the time of his death that the value thereof is taxable in his estate. Respondent claims that under the terms of the Friedman will decedent was the ultimate beneficiary of his share of the income from the trust, that his estate was entitled to receive that income until the trust terminated, and that this was a vested interest, the value of which is taxable in his estate.

The provisions of Friedman's will pertaining to the income of the trust were as follows:

Such securities shall be held by such trustee and in trust for the benefit of my mother * * * and my sisters, Mrs. Ida Williams, Mrs. Blanche C. Keiler and Mrs. Sunshine F. Nahm and their children and [sic] hereinafter provided. The trustee * * * will pay to my mother and my three sisters, or to the heirs of such of my sisters as may die, equally the income from said trust fund. When my mother dies her interest in said income is to go to her daughters or their children, if any of them be dead. And the interest of each of my sisters in the income from said estate in the hands of such trustee upon her death shall go to her children. It being my purpose to create an estate in the hands of the trustee * * * the income from which shall go to my mother and my three sisters as long as my mother lives and at her death to my three sisters as long as they live and in the event of the death of either one of them her interest shall go to her children.

The intent of the testator with regard to distribution of the income of the trust in the event the children of any of the three sisters should die before the trust terminated is not as easily determined from the words quoted above as was his intent with respect to disposition of the corpus. This is because in one instance the word "heirs" of the sisters is used while in several other instances the word "children" of the sisters is used. Where such doubt exists we must try to determine the testator's intent with regard to the income from all of the terms of the will. *Harrison* v. *Shippen, supra.* In *Gresham* v. *Durham,* 270 S. W. 2d 952 (Ky. Ct. App. 1954), the court said:

the apparent objects operating to influence testator's mind should be considered and the words used in the will given that *reasonable construction* best calculated to carry out the wishes of the testator as reflected by his will. [Emphasis added.]

We have concluded above that the ultimate beneficiaries of the corpus of the trust, "the heirs of each of my said sisters," are not to be determined until the termination of the trust. We think it would be inconsistent with the overall plan of the testator for disposition of his estate, as manifested by the language of the will as a whole, and an unreasonable construction of the above-quoted provisions, to construe the income provisions in a manner that would cause the income from decedent's share of the trust to be paid to decedent's estate, rather than to the granddaughter of Ida, from the time of decedent's death until the termination of the trust, at which time the corpus will presumably be distributed to the granddaughter, Anita, in fee. But such would be the result if we accept respondent's argument that the word "children" used in the quoted provision is controlling and was a word of limitation that vested the income interest in this decedent and made the value thereof taxable in his estate.

Analyzing the income provisions themselves, in the light of the will as a whole, leads us to the conclusion that Friedman intended the income of the trust to be distributed to the heirs, as currently determined, of his sisters, and did not intend that a sister's share of the income be distributed to the estate of a child of hers who died before termination of the trust. Friedman was obviously concerned with tying up the estate for the benefit of the lineal descendants of his sisters as long as reasonably permissible under the law, and it is reasonably certain that he did not intend to permit a child of a deceased sister to divert the income of the trust to someone that was not a lineal descendant of that sister. See *Lincoln Bank & Trust Co.* v. *Bailey*, *supra* at 166.

The principal dispositive sentence in the income provision above quoted reads: "and will pay to my mother and my three sisters, or to the heirs of such of my sisters as may die, equally the income from said trust fund." This clearly evidences an intent to have the income paid to the heirs or lineal descendants of a deceased sister while the trust was in existence. We think it is a reasonable construction of the use of the word "children" in the following sentences of the income provision that testator wanted to make it clear that the "heirs" of the sisters meant lineal descendants, i.e., "children." To construe the word "children" as a word of limitation would, in our opinion, be inconsistent with the prior use of the word "heirs" and with the remainder of the will. But to categorize the word "children" as a word of description would permit a determination of the testator's intent consistent with other parts of the will. We so construe the income provisions of the will and conclude that decedent had only a life estate in the income from the trust which terminated at his death and was not taxable in his estate.

We note that this conclusion appears to accord with our decedent's understanding of the provisions of the Friedman trust because, when he deliberately made no provision for his daughter in his own will, he obviously thought she would receive his share of the income from the trust until it terminated and then Ida's share of the corpus. We also note that our conclusion is in accord with the actual distribution of the trust income, not only with respect to decedent's share of the income since his death, but also with respect to the share of Blanche C. Keiler, one-half of which has been distributed to her granddaughter and grandson since the death of their father, Leo F. Keiler, who was a child of Blanche.

*Decision will be entered for the petitioner.*